CLERKS OFFICE U.S. DIST. COURT
AT LYNCHBURG, VA
FILED

2/3/2020

JULIA C. DUDLEY, CLERK
BY: s/ CARMEN AMOS
DEPUTY CLERK

# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF VIRGINIA
## LYNCHBURG DIVISION

|  |  |
|---|---|
| CHERIE C. WHITEHURST,<br><br>*Plaintiff*,<br><br>v.<br><br>BEDFORD COUNTY SCHOOL BOARD, *et al.*,<br><br>*Defendants.* | CASE NO. 6:19-cv-00010<br><br>MEMORANDUM OPINION<br><br>JUDGE NORMAN K. MOON |

## INTRODUCTION

Before the Court is Defendants Bedford County School Board and Dr. Douglas Schuch's motion to dismiss for failure to state a claim. Dkt. 9. Plaintiff Dr. Cherie C. Whitehurst's amended complaint raises two counts, which share the same factual basis. In Count I, Plaintiff alleges that Bedford County School Board, acting through its superintendent, Schuch, violated Title VII's disparate treatment and anti-retaliation provisions. In Count II, Plaintiff raises claims arising under 42 U.S.C. § 1983 against Schuch in his individual capacity. Plaintiff alleges that Schuch, acting under color of state law, violated her rights under the Equal Protection Clause both by treating her differently than similarly situated male counterparts and by retaliating against her for filing a sex-based discrimination claim.

On September 6, 2019, Plaintiff filed an objection to Defendants' Motion to Dismiss, claiming that, pursuant to Rule 11(b) of the Local Rules of the Western District of Virginia, the motion should be deemed withdrawn for failure to arrange a hearing within sixty days of the motion's filing. Dkt. 19.

For the following reasons, the Court will grant in part and deny in part the Defendants'

motion to dismiss. For Defendants' failure to arrange a hearing within sixty days of the motion's filing, the Court will assess attorney's fees upon Defendants.

## I. ALLEGED FACTUAL BACKGROUND

### A. Background

Plaintiff Dr. Cherie Whitehurst began her career in Bedford County Public Schools in 1990. Dkt. 8 at ¶ 14. After serving in teaching positions from 1990 through the 1995–96 academic year, she began serving in school administration positions in Bedford County Public Schools. *Id.* at ¶¶ 11–13. In 2009, she was promoted to Assistant Superintendent of Bedford County Public Schools, and in 2014, she was again promoted, this time to Deputy Superintendent. *Id.* at ¶ 16. At the time of her second promotion, Plaintiff also began serving as Bedford County School Board's Chief Academic Officer. *Id.* As Deputy Superintendent during the 2017–18 academic year, Plaintiff was to receive the following compensation: $123,015.00 in base salary, $6,151.00 in additional doctoral supplement, and $3,600.00 for an automobile entitlement, totaling $132,766. *Id.* at ¶ 17; Dkt. 8, Ex. 2 (salary agreement).

### B. Alleged Discriminatory Comments

As Assistant Superintendent and, later, Deputy Superintendent, Plaintiff alleges that she reported directly to Schuch. *Id.* at ¶ 20. During this time period, Plaintiff alleges specific quotes from Schuch's evaluations of Plaintiff's performance from 2010 through 2017 that were universally and overwhelmingly positive; a number of these even explicitly suggested that she was ready to "succeed as a school division superintendent." *Id.* at ¶ 21.

Plaintiff alleges, however, that during the same period she received Schuch's glowing reviews, she also was the object of "regular discriminatory actions and comments from Schuch" that would be "too numerous to catalogue fully." *Id.* at ¶¶ 22–24. Specifically, Plaintiff alleges, without providing further detail, that she "began to feel marginalized by Schuch, whose internal

reorganization process shifted responsibilities away from her position and to men that held subordinate roles." *Id.* at ¶ 26. Plaintiff also states that Schuch refused to eat lunch alone with her in public "for fear that someone may suspect that he was engaging in an extramarital affair." *Id.* at ¶ 27. Plaintiff claims that Schuch "never adhered to the same rule with [her] male counterparts who held senior management positions with BSCB, such as the chief financial officer and chief operations officer." *Id.* She claims that this difference in treatment placed her at a relative disadvantage in developing a professional relationship with Schuch. *Id.*

Additionally, Plaintiff alleges that Schuch has made various comments regarding "the inferiority of women in the workplace compared to men." *Id.* at ¶ 28. Specifically, she alleges Schuch stated, on two occasions, that Plaintiff and a female colleague of hers were "the only women on senior staff and how does it look for the two of you to be having problems?" *Id.* at ¶ 29. Plaintiff further alleges that on multiple occasions, when Plaintiff would question Schuch's rationale for a decision, he would respond that she was "cycling"—a reference to the female menstrual cycle—or state that "talking to you is like talking to my wife." *Id.* at ¶ 31.

Plaintiff alleges that she complained to the Bedford County School Board's human resources department about Schuch's comments but that—without consulting Plaintiff—those comments were shared with Schuch. *Id.* at ¶ 35. Schuch then made a referral for Plaintiff to enter Bedford County School Board's "employee assistance program" ("EAP"). *Id.* Plaintiff, who was a member of the All Points EAP Board of Directors, felt significant embarrassment as a result of the referral to EAP, and she consequently resigned from that post in January 2017. *Id.* at ¶ 37. Plaintiff alleges that Schuch used the EAP referral as punishment for reporting the "cycling" and "wife" comments to the human resources department. *Id.* at ¶ 36.

### C. Plaintiff's Demotion to Principal from Deputy Superintendent Position

On or about May 16, 2018, Plaintiff alleges that Schuch informed her that she was being removed from her position as Deputy Superintendent of Bedford County Public Schools. *Id.* at ¶ 45. Following up on her termination from her position, Plaintiff alleges that on May 21, 2018, Schuch conveyed to Plaintiff that she would be demoted to a school principal position for the 2018–19 academic year, again refusing to provide any specific reason for Plaintiff's demotion.[1] She claims that Schuch failed to cite any specific reason for her removal, noting only that her demotion was in the best interest of the school division. *Id.*

Importantly, Plaintiff alleges that this notice of demotion came the very next day after she challenged Schuch about the propriety of a question posed during an interview to a candidate for a school principal position. Specifically, Plaintiff alleges that, during the interview, Schuch questioned a white male candidate, stating as part of a question[2] that "[the outgoing principal] is a woman, you are a man; she is African American and you are white." *Id.* at ¶¶ 41–42. Plaintiff confronted Defendant about this question after the interview "at an appropriate time, and in an appropriate setting." *Id.* at ¶ 43.

In demoting her, Plaintiff alleges that Schuch also "effectively relieved Dr. Whitehurst of her job responsibilities for the balance of the academic year" (that is, through the end of June 2018). *Id.* at ¶ 47. Plaintiff notes that this demotion was in tension with the glowing evaluations Schuch had given her over the past several years, several of which included a recommendation that she grow toward serving as superintendent. *Id.* at ¶¶ 21, 49. Plaintiff represents that a demotion

---

[1] Defendants argue that there is no allegation that Plaintiff accepted this offer to serve as principal and that the Court can only infer that Plaintiff rejected the offer. Dkt. 15 at 6. But at the motion-to-dismiss stage, the Court may only look at the facts as alleged in the amended complaint, resolving all inferences in favor of the plaintiff.

[2] Plaintiff does not provide any factual allegations as to the question itself; she included in her amended complaint only this portion that she found objectionable.

to a principal position would not just represent "a professional step backwards" for her, but it would also result in the elimination of the automobile entitlement of $3,600 that she was due as Deputy Superintendent. *Id.* at ¶ 55. Further, the principal position to which Plaintiff was to be demoted was "explicitly not renewable, despite [Plaintiff] having achieved continuing contract status as a principal prior to becoming Assistant Superintendent in July 2009." *Id.* at ¶ 56.

### D. Plaintiff's Sex-Based Discrimination Claim and Defendants' Alleged Retaliation

Plaintiff alleges that she then filed a claim of sex-based discrimination with Defendant Bedford County School Board, "outlining the sustained pattern of discrimination by Schuch that she had endured over the previous nine years, and specifically, the discriminatory act of demoting her." *Id.* at ¶ 57. Bedford County School Board retained an independent investigator to review Plaintiff's allegations. *Id.* at ¶ 58. During this review, the school board permitted Schuch to continue working, which Plaintiff claims runs contrary to "well established best practices in the field of human resources." *Id.* While Plaintiff takes issue with key aspects of the investigator's report, she notes that the report did at least caution Defendants Schuch and Bedford County School Board that "in accordance with Policy GBA, retaliation against anyone who has reported discrimination or harassment or participated in any related proceeding is strictly prohibited." *Id.* at ¶ 61.

Plaintiff alleges that one business day after this report was submitted, Schuch signed a letter further demoting Plaintiff to a teaching position, "a role that she had not held for more than two decades." *Id.* at ¶ 63. The same letter indicated that Plaintiff's salary would "be reduced accordingly."[3] *Id.* at ¶ 67. Schuch explained that the reasons for this second demotion

---

[3] While this letter does not include a salary figure, Plaintiff alleges that "on information and belief this would have resulted in a total reduction of more than $72,000 compared to her compensation as Deputy Superintendent." Dkt. 8 at ¶ 67.

recommendation "include [Plaintiff's] unwillingness to effectively understand and support the organizational structure of the school division. Additionally, [Plaintiff's] attitude and personal interactions with many school division leaders have created a professional climate that limits collaboration and impedes progress in implementing [Bedford County Public Schools'] strategic plan." *Id.* at ¶ 64. According to the complaint, Schuch cited no specific behavior as problematic or falling short of his or the school board's expectations. *Id.* On the contrary, Plaintiff notes that in his evaluation from the prior year, Schuch remarked how the Plaintiff had led "innovative practices that support the BCPS Strategic Plan." *Id.* at ¶ 66. In response to Schuch's letter recommending demotion, Plaintiff filed through counsel a second charge of sex-based discrimination with the school board against Schuch. *Id.* at ¶ 68.

On June 21, 2018, the school board held a hearing on Plaintiff's original discrimination allegations relating to her nine years of alleged discriminatory treatment—including her demotion to principal—but it refused to consider the charges she filed with the board after receiving Schuch's second demotion recommendation letter, recommending her to a teaching position. *Id.* at ¶ 69. Bedford County School Board upheld Schuch's demotion recommendation—it assigned Plaintiff to an "instructional coach" position—rather than a principal position as Schuch originally recommended. The demotion resulted in a loss of more than $18,500.00 in annual compensation when compared to her compensation as Deputy Superintendent and Chief Academic Officer. *Id.* at 72.

Plaintiff alleges that Defendants' acts or omissions resulted in damages that include, but are not limited to, loss of past and future wages, physical and emotional pain, mental anguish, embarrassment, inconvenience, and loss of enjoyment of life. *Id.* at ¶ 75.

Plaintiff filed her amended complaint on May 24, 2019, seeking back pay, front pay,

compensatory damages, punitive damages, and reasonable attorney's fees and costs. Dkt. 8 at 20. On June 7, 2019, Bedford County School Board and Douglas Schuch filed a joint motion to dismiss for failure to state a claim, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. Dkt. 9. This matter is now fully briefed and ripe for disposition.

## II. STANDARD OF REVIEW

A motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6) tests the legal sufficiency of a complaint to determine whether a plaintiff has properly stated a claim. The complaint's "[f]actual allegations must be enough to raise a right to relief above the speculative level," *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007), with all allegations in the complaint taken as true and all reasonable inferences drawn in the plaintiff's favor, *King v. Rubenstein*, 825 F.3d 206, 212 (4th Cir. 2016). A motion to dismiss "does not, however, resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Id.* at 214.

Although the complaint "does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his entitle[ment] to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. A court need not "accept the legal conclusions drawn from the facts" or "accept as true unwarranted inferences, unreasonable conclusions, or arguments." *Simmons v. United Mortg. & Loan Inv., LLC*, 634 F.3d 754, 768 (4th Cir. 2011) (internal quotations omitted). This is not to say Rule 12(b)(6) requires "heightened fact pleading of specifics," instead the plaintiff must plead "only enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. Still, "only a complaint that states a plausible claim for relief survives a motion to dismiss." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009).

### III.    ANALYSIS

Defendants advance the following arguments in support of their motion to dismiss. First, Defendants contend that Plaintiff's disparate treatment claim under Title VII and § 1983 must fail because she has not alleged the facts necessary to demonstrate that similarly situated males received more favorable treatment. Second, they argue that Plaintiff's demotion to instructional coach could not have been a retaliatory act, because there is no causal connection between her demotion and her filing of sex discrimination charges. Third, Defendants claim that Plaintiff's demotion to "instructional coach" was the only reassignment permitted under Virginia law, which they contend prohibited her involuntary reassignment to a principal position. Fourth, they argue that Schuch is entitled to qualified immunity on the claims against him. This Memorandum Opinion will address each of these arguments in turn.

### A.  Count I: Title VII Claim Against Bedford County School Board

1. Disparate treatment claim based on Schuch's recommendation that Plaintiff be demoted to a principal position

Title VII makes it an unlawful employment practice "to fail or refuse to hire or to discharge any individual, or otherwise . . . discriminating against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a). Employment practices made unlawful under § 2000e-2 are established "when the complaining party demonstrates that race, color, religion, sex, or national origin was a motivating factor for any employment practice, even though other factors also motivated the practice." § 2000e-2(m).

Plaintiffs attempting to prove violations of Title VII and other employment discrimination statutes have two avenues by which they may proceed. *Gardy v. McCarthy*, No. 17-cv-1141, 2018 WL 3105769, at *14, (D. Md. June 22, 2018) (citing, *inter alia*, *Foster v. Univ. of Maryland-*

*Eastern Shore*, 787 F.3d 243, 249 (4th Cir. 2015)). Plaintiffs have the option of providing direct or circumstantial evidence of discriminatory motive, proceeding under what has become known as the "mixed-motive" framework." *Foster*, 787 F.3d at 249. Alternatively, a plaintiff may establish discriminatory motive through the burden-shifting framework outlined in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973), under what has become known as the "pretext" framework. *See Foster*, 787 F.3d at 249.

Under the mixed-motive framework, a plaintiff provides direct evidence of discriminatory intent where she alleges "conduct or statements that both . . . reflect directly the alleged discriminatory attitude . . . and bear directly on the contested employment decision." *Laing v. Fed. Exp. Corp.*, 703 F.3d 713, 717 (4th Cir. 2013). But, as the Fourth Circuit has noted, "in the absence of a clear nexus with the employment decision in question, the materiality of stray or isolated [discriminatory] remarks is substantially reduced." *Merritt v. Old Dominion Freight Line, Inc.*, 601 F.3d 289, 300 (4th Cir. 2010).

Under the *McDonnell Douglas* "pretext" framework, the prima facie case for a disparate treatment claim requires a plaintiff to demonstrate that (1) she is a member of a protected class, (2) she maintained satisfactory job performance, (3) an adverse employment action was taken against her, and (4) she received treatment that was different from similarly situated employees outside the protected class, *Coleman v. Md. Court of Appeals*, 626 F.3d 187, 190 (4th Cir. 2010), or the adverse action was taken against her "under circumstances giving rise to an inference of unlawful discrimination," *Adams v. Trustees of the Univ. of N.C.-Wilmington*, 640 F.3d 550, 558 (4th Cir. 2011). *See Swaso v. Onslow Cty. Bd. of Educ.*, 698 F. App'x 745, 748 (4th Cir. 2017) (per curiam) (affirming district court's motion to dismiss employment discrimination claim and citing the prima facie case formulation in *Adams*, 640 F.3d 550); *Ellis v. Harrelson Nissan of South*

*Carolina, LLC*, No. 0:15-cv-3322, 2017 WL 4349212, at *9 (D.S.C. Sept. 29, 2017) (explaining in review of motion for summary judgment that the fourth prong of the prima facie case need not be satisfied solely through comparator evidence); *see also Spencer v. Va. State Univ.*, 919 F.3d 199, 207 (4th Cir. 2019) (applying *Adams*-style formulation in the pay-disparity context).

It bears emphasizing that these two avenues are a means of proving a plaintiff's claims *at trial*. Given that this action is currently at the motion-to-dismiss stage, these frameworks "merely serve to inform a court's evaluation of the allegations or the evidence." *Grady*, 2018 WL 3105769, at *16; *see Felder v. Maximus, Inc.*, No. 16-cv-3517, 2017 WL 915003, at *2 (D. Md. Mar. 8, 2017) (stating that pleading a prima facie case, even if not necessary, is sufficient to survive a motion to dismiss). In the U.S. Supreme Court's decision in *Swierkiewicz v. Sorema*, 534 U.S. 506, 510 (2002), the Court emphasized that *McDonnell Douglas*'s prima facie case is an "evidentiary standard, not a pleading requirement." The Fourth Circuit recently interpreted this in light of the Supreme Court's subsequent opinions in *Twombly* and *Iqbal*, articulating that while *Swierkiewicz* remains binding precedent and that a plaintiff is "not required to plead facts establishing a prima facie case of discrimination to survive a motion to dismiss . . . a plaintiff is nonetheless required to allege facts to satisfy the elements of a cause of action created by the relevant statute in compliance with *Iqbal*." *Woods v. City of Greensboro*, 855 F.3d 639, 648 (4th Cir. 2017) (citing *McCleary-Evans v. Md. Dep't of Transp.*, 780 F.3d 582, 584 (4th Cir. 2015)) (internal quotations and alternations omitted).

Plaintiff has not plausibly stated a claim to relief under the first avenue, because she has not made the requisite showing of direct or circumstantial evidence of discriminatory motive in her amended complaint. While Plaintiff does allege that Schuch made various allegedly discriminatory comments over the course of nine years on largely unspecified occasions, she fails

to allege a clear nexus between those comments and her demotion. Dkt. 8 at 28–34 (alleging, *inter alia,* that "on multiple other occasions across various years" Schuch remarked to Plaintiff that she was "cycling" and "on still other occasions, and as recently as January 2018" that "talking to [Plaintiff] is like talking to my wife"); *see Volochayev v. Sebelius*, 513 F. App'x 348 (Table), at *3 (4th Cir. 2013) (finding employer's numerous anti-Russian comments unable to support a mixed-motive claim because the comments shared no clear nexus with the alleged adverse employment action); *Merritt*, 601 F.3d at 300.

Moreover, in order to state a claim for gender discrimination based on direct or circumstantial evidence, Plaintiff must do more than allege that her employer has a generalized discriminatory bias. Rather, the law requires that the bias "bear directly on the contested employment decision." *Warch v. Ohio Cas. Ins. Co.*, 435 F.3d 510, 520 (4th Cir. 2006) (internal citations omitted) (affirming grant of summary judgment to defendant). There is largely no indication of when these comments were made, and there is no indication that they were even made temporally close to Schuch's recommendation to demote her to principal. Without sufficient allegations of such a causal nexus, Plaintiff cannot state a plausible claim under this theory of liability. *See Bacchus v. Price*, No. 17-cv-1511, 2018 WL 3575055, at *6 (D. Md. July 25, 2018) (denying motion to dismiss where discriminatory comments about plaintiff's accent, and thus national origin, were made during an interview and so plausibly bore directly on the contested decision not to promote her). Thus, the Court will examine whether the Plaintiff has stated a plausible claim for gender discrimination under the *McDonell Douglas* framework.

The parties do not contest that Plaintiff, as a woman alleging sex discrimination, is a member of a protected class under *McDonell Douglas*'s first prong. Further, the amended complaint more than adequately alleges that she had maintained at least satisfactory job

performance during her tenure with Bedford County Public Schools, as required by the second prong of the analysis. Dkt. 8 at ¶ 21. And, as to the third prong, the parties also do not dispute whether Schuch, acting as superintendent for Bedford County School Board, took at least one adverse action against Plaintiff when he recommended that she be demoted from her role as deputy superintendent (and, presumably her title of chief academic officer as well) to a principal position, given the commensurate drop in compensation and title that the new role carried. Dkt. 8 at ¶ 55. The parties, however, disagree on whether Plaintiff has pleaded facts sufficient to allege the fourth element of Plaintiff's disparate treatment claim under the *McDonnell Douglas* framework: treatment different than that provided to similarly situated employees outside the protected class.

Defendants contend, first, that Plaintiff has failed to allege sufficient facts to support a claim that her senior administration counterparts were actually similarly situated to her. Dkt. 11 at 5. Second, they argue that Plaintiff failed to allege sufficient facts to find—even had Plaintiff properly alleged a similarly comparator—that they received more favorable treatment for similar conduct. *Id.* The Court will address each of these arguments in turn.

### i. Comparator Evidence

At the outset, the Court notes that "a plaintiff is not required as a matter of law to point to a similarly situated comparator in order to succeed on a discrimination claim." *Laing v. Fed. Exp. Corp.*, 703 F.3d 713 (4th Cir. 2013) (Wilkinson, J.) *(quoting Bryant v. Aiken Reg'l Med. Ctrs. Inc.*, 333 F.3d 536, 545 (4th Cir. 2003)) (discussing generally the role of comparator evidence in discrimination cases) (alterations and internal quotations omitted); *see Swaso*, 698 F. App'x at 748 ("A plaintiff is not required to identify a similarly situated white comparator to prove her discrimination claim, so long as she can establish an inference of unlawful discrimination through other means."); *Robinson v. Loudon Cty. Pub. Schs.*, No. 1:16-cv-1604, 2017 WL 3599639, at *3

(E.D. Va. Aug. 18, 2017).

But, as the Fourth Circuit has instructed in *Swaso*, plaintiffs who attempt to rely on similarly situated comparators in establishing circumstances giving rise to an inference of unlawful discrimination must demonstrate that the similarity between the comparators is "clearly established in order to be meaningful." *Swaso*, 698 F. App'x at 748 (citing *Lightner v. City of Wilmington*, 545 F.3d 030, 265 (4th Cir. 2008)) (internal quotations omitted); *Ofoche v. Apogee Med. Grp., Va, P.C.*, No. 4:18-cv-00006, 2019 WL 254674, at *2 (W.D. Va. Jan. 17, 2019) (Kiser, J.) (citing *Haywood v. Locke*, 387 F. App'x 355, 359 (4th Cir. 2010)) (granting motion to dismiss plaintiff's Title VII claim because Plaintiff relied on insufficient comparator allegations in pleading her claim); *Robinson*, 2017 WL 3599639, at *4 (granting in part motion to dismiss because plaintiff based discrimination claim on presence of a comparator but failed to adequately allege similarity).

For a comparator from a non-protected class to be considered "similarly situated," Plaintiff ultimately must *prove* that they are similarly situated in "all relevant aspects," *Crawford v. Dep't of Corr. Educ.*, No. 3:11-cv-430, 2011 WL 5975254, at *6 (E.D. Va. Nov. 29, 2011) (emphasis supplied), thereby demonstrating that the comparator "dealt with the same supervisor, . . . [was] subject to the same standards, and . . . engaged in the same conduct without such differentiating or mitigating circumstances that would distinguish their conduct or the employer's treatment of them for it." *Id.* (quoting *Mitchell v. Toledo Hosp.*, 964 F.2d 577, 583 (6th Cir. 1992)). But evidentiary determinations are not appropriate at this stage of litigation. Rather, on a motion to dismiss, Plaintiff need only plausibly allege a set of facts that support her discrimination claim. *Woods*, 855 F.3d at 650–51 (stating that "evidentiary determinations regarding whether the comparators' features are sufficiently similar to constitute appropriate comparisons generally should not be made [at the motion-to-dismiss stage]"); *Tabb v. Bd. of Educ. of Durham Public Schs.*, 2019 WL

688655, at *8 (M.D.N.C. Feb. 19, 2019) (applying *Woods*).

Plaintiff claims in both Count I and Count II that she was denied

the equal protection of the laws [because she was] discriminat[ed] against on the basis of her sex [by the Defendants] by, among other things:

> a.  Treating her differently *than her similarly situated male counterparts* on the basis of her sex by recommending that she be demoted for the 2019–2019 academic year . . . .

Dkt. 8 at 18–19 (emphasis supplied). Throughout the amended complaint, Plaintiff provides factual allegations relating her treatment to that of similarly situated comparators. *See id.* at ¶¶ 25, 52, 85. Thus, although it is not necessary for plaintiff to plead comparator evidence in order to successfully state a claim for discrimination under Title VII, it appears that Plaintiff has chosen to base her discrimination claim on comparator evidence. *See Robinson*, 2017 WL 3599639, at *4. She must therefore adequately plead that her comparators were both similarly situated and engaged in similar conduct without facing the same adverse employment actions.

### *a.  Similarly Situated Counterparts*

In her amended complaint, Plaintiff alleges that her "male counterparts who held comparable senior management positions with [Bedford County School Board]" are suitable comparators for purposes of her disparate treatment claim. Dkt. 8 at ¶ 25. Specifically, Plaintiff cites the chief financial officer and chief operations officer as her senior management counterparts, given her own role as chief academic officer. *Id*. Defendants argue that these senior officers cannot be similarly situated because they do not share the same title—but that is true of any chief officer in any organization: chief officers are, definitionally, without equals in title within their roles in an organization. Dkt. 11 at 5; *see Tyler-Perkins v. Va. Cmty. Coll. Sys.*, No. 3:18-cv-872, 2020 WL 130137, at *11 n.8, (E.D. Va. Jan. 10, 2020) (finding individuals with different job titles may still be considered proper comparators under Title VII); *Bateman v. Amer. Airlines, Inc.*, 614 F. Supp.

2d, 660, 664 (E.D. Va. 2009) (holding that "a similarly-situated comparator may be similar to Plaintiff in all relevant aspects despite having a different job title").

Plaintiff would have done well to add more detail to better illustrate how these comparators were similarly situated to Plaintiff (for example, by comparing their duties, responsibilities, hours, and reporting structure). But while such details certainly would have been helpful, such additional facts are unnecessary at the motion-to-dismiss stage, where the pleadings need only "raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555; *Woods*, 855 F.3d at 650–51.

### b. More favorable treatment of similarly situated counterparts

In addressing whether such similarly situated counterparts received more favorable treatment, Plaintiff formulaically alleges that Defendants did not take "any such actions against her similarly situated counterparts." Dkt. 8 at ¶ 52. Plaintiff does not cite any instances where her male counterparts engaged in the same conduct—for example, challenging the decisionmaking of the superintendent—and received more favorable treatment than she did. *Cf. Lee v. Mattis*, No. 17-cv-2836, 2018 WL 3439261, at *9–10 (D. Md. July 17, 2018) (finding that plaintiff adequately alleged that she was treated different from similarly situated employees outside her protected class).

Without any allegations to this effect, Plaintiff has failed to plead every element of a disparate treatment claim under Title VII. *See Prince Garrison v. Md. Dep't of Health And Mental Hygiene*, 317 F. App'x 351, 354 (4th Cir. 2009) (unpublished) ("Because Prince-Garrison failed to identify a fellow employee who engaged in misconduct similar to hers or was disciplined in any way, the district court correctly dismissed this claim"); *Lightner*, 545 F.3d at 265 (rejecting a Title VII disparate discipline claim where plaintiff could not show he was similarly situated to another disciplined employee); *Sanchez v. Whole Foods Market Grp., Inc.*, No. 18-cv-3106, 2019 WL

3717771, at *4 (D. Md. Aug. 5, 2019) (granting motion to dismiss on disparate treatment claim where plaintiff only alleged that a defendant employer treated Hispanic plaintiff "differently than its Caucasian managers").

While this Court recognizes that comparisons between similarly situated employees "will never involve precisely the same set of work-related [conduct] occurring over the same period of time and under the same sets of circumstances," *Haynes v. Waste Connections, Inc.*, 922 F.3d 219, 223 (4th Cir. 2019) (quoting *Cook v. CSX Transp. Corp.*, 988 F.2d 507, 511 (4th Cir. 1993)) (internal quotations omitted) (reversing district court's grant of summary judgment), Plaintiff must state more than the formulaic allegations currently recited in her amended complaint. As pleaded, the Court is left to speculate as to the treatment that Plaintiff's similarly situated male comparators received when taking actions similar to those that gave rise to her demotion recommendation and subsequent demotion. *See McCleary-Evans v. Md. Dep't of Transp.*, 780 F.3d 582, 586 (4th Cir. 2015). Consequently, the Court will grant Defendants' motion to dismiss as to Count I's disparate treatment claim, without prejudice, and with leave to amend.

2. Retaliation claim based on Schuch's recommendation that Plaintiff be demoted to a teaching position

After filing her claim for sex-based discrimination "outlining the sustained pattern of discrimination by Schuch that she had endured over the previous nine years, and specifically, the discriminatory act of demoting her," Dkt 8 at ¶ 57, Bedford County School Board hired an independent investigator to review the allegations, *id.* at ¶ 58. Just one business day after the investigator's report was filed, Plaintiff alleges that Schuch, acting in his role as superintendent, retaliated against Plaintiff by again recommending that she be demoted. *Id.* at ¶ 63. Rather than restating his recommendation that she be demoted to a principal position, Plaintiff alleges that Schuch recommended this time that Plaintiff be demoted, even further down the hierarchy, to a

teaching position, "a role that she had not held for more than two decades." *Id.* The same letter

indicated that Plaintiff's salary would "be reduced accordingly."[4] *Id.* at ¶ 67. This second demotion

recommendation letter led Plaintiff to file a second charge of sexual discrimination.

After a hearing, which addressed only Plaintiff's first sexual discrimination charge,

Bedford County School Board ultimately upheld Schuch's recommendation to demote Plaintiff,

choosing to reassign her to an "instructional coach" position. *Id.* at ¶ 69. The demotion resulted in

a loss of more than $18,500.00 in annual compensation when compared to her compensation as

Deputy Superintendent and Chief Academic Officer. *Id.* at ¶ 72.

Title VII's anti-retaliation provision prohibits employers from taking action to

"discriminate against" an employee because she has "opposed any practice made an unlawful

employment practice" by Title VII or because she has "made a charge, testified, assisted, or

participated in any manner in an investigation, proceeding or hearing" under Title VII. 42 U.S.C.

§ 2000e-3(a).

 In order to establish a prima facie case for retaliation under Title VII, a plaintiff must prove

"(1) that she engaged in a protected activity, as well as (2) that her employer took an adverse

employment action against her, and (3) that there was a causal link between the two events." *Boyer-*

*Liberto v. Fontainebleau Corp.*, 786 F.3d 264, 281 (4th Cir. 2015) (en banc) (internal citations

omitted).

The parties have not raised any arguments disputing the first and second of these elements.[5]

---

[4] While the letter that Plaintiff cites does not include a salary figure, Plaintiff alleges that "on information and belief this would have resulted in a total reduction of more than $72,000 compared to her compensation as Deputy Superintendent." Dkt. 8 at ¶ 67.

[5] While Defendants opposed Plaintiff's disparate treatment claim based on Schuch's recommendation that she be demoted for the 2018–2019 academic year, they made no such efforts to argue that Plaintiff's decision to file a sex discrimination charges with the school board, outlining nine years of sex discrimination *in addition* to the initial demotion recommendation, was not a protected activity.

The Fourth Circuit interprets the term "unlawful employment practice" with wide breadth, providing "broader protection for victims of retaliation than for even victims of . . . discrimination." *DeMasters v. Carilion*

Thus, the Court will assess whether the allegations in the amended complaint state a causal link between Plaintiff's filing of sex discrimination charges with the school board and the subsequent demotion recommendation to a teaching position as well as her ultimate reassignment to "instructional coach."

i. *Causal Connection*

In assessing whether there is a causal connection between the protected activity and the adverse employment action, courts first look to "whether the allegedly retaliatory actor was aware that the plaintiff had engaged in the protected activity at the time of the allegedly retaliatory act, and [then look to] the temporal proximity between the protected activity and the allegedly retaliatory act." *Lewis v. Baltimore City Bd. of Sch. Cmm'rs*, 187 F. Supp. 3d, 588, 596 (D. Md. 2016) (citing *Baqir v. Principi*, 434 F.3d 733, 748 (4th Cir. 2006)); *Dowe v. Total Action Against Poverty in Roanoke Valley*, 145 F.3d 653, 657 (4th Cir. 1998)). The Court concludes that Plaintiff has pleaded allegations that satisfy both of these aspects of the analysis.

There is no dispute that Schuch and the school board were aware that Plaintiff had engaged in a protected activity—namely, filing discrimination charges with the school board. Rather, Defendants argue that the second demotion recommendation letter and subsequent reassignment could not be causally linked to her decision to file sex discrimination allegations, because these actions were merely a continuation of a demotion process that began when Superintendent Schuch first recommended that Plaintiff be demoted to a principal position, which took place before Plaintiff filed her allegations. They contend that Plaintiff rejected the principal position that was

---

*Clinic,* 796 F.3d 409, 418 (4th Cir. 2015) (internal citations omitted); *see Burlington Northern & Santa Fe Ry. Co.*, 126 U.S. at 66 (2006) (finding that it is not "'anomalous' to read the statute to provide broader protection for victims of retaliation than for those whom Title VII primarily seeks to protect"). Indeed, in the Fourth Circuit, the employment practice in question need not even be truly unlawful, rather the plaintiff need only have had a "reasonable belief" that the practice was unlawful. *Boyer-Liberto*, 786 F.3d at 282.

offered to her, and Virginia law does not permit a school board to involuntarily reassign her to anything but a teaching position. In this way, Defendants argue that Plaintiff's ultimate demotion recommendation and involuntary reassignment were by "operation of Virginia law" rather than by any choice or action of Bedford County School Board and Superintendent Schuch.

In making this argument, however, Defendants critically rely on an inference drawn from the amended complaint that they resolve in their *own* favor, rather than the Plaintiff's, as the law requires. Namely, Defendants repeatedly and emphatically claim that because there are not allegations in the amended complaint that indicate Plaintiff accepted the principal position, the Court must infer that Plaintiff rejected the offer. But when reviewing a motion to dismiss, the Court must refrain from considering factual allegations outside the well-pleaded complaint, and further, the Court must resolve all inferences in favor of the *non-moving party*. *King*, 825 F.3d at 212. While it is true that the amended complaint contains no allegations that Plaintiff accepted the offer, it is also true that there are no allegations that indicate she rejected it. Indeed, Plaintiff has not even pleaded any allegations that she so much as contemplated rejecting the principal position. Thus, as it has already indicated, *see supra* note 2, the Court cannot accept any inference that she rejected the offer.

To the extent it survives without such an inference, the Court also rejects Defendants' assertion that Plaintiff's demotion recommendation and reassignment occurred by "operation of Virginia law." In support of their argument, Defendants cite to Va. Code Section 22.1-294(C):

> Continuing contract status acquired by a principal, assistant principal, or supervisor shall not be construed (i) as prohibiting a school board from reassigning such principal, assistant principal, or supervisor to a teaching position . . . or (ii) as entitling any such principal, assistant principal, or supervisor to the salary paid him as principal, assistant principal, or supervisor in the case of any such reassignment . . . .

Defendants contend that this statute prohibits the school board from involuntarily reassigning a

supervisor, like Plaintiff, to anything *but* a teaching position after her purported rejection of the principal position. Defendants cite no cases supporting this interpretation directly. Rather, they cite to a single collective bargaining case for the principle that local public bodies may exercise "only those powers conferred expressly or by necessary implication," known as the Dillon Rule. Dkt. 15 at 5 (quoting *Commonwealth v. Cty. Bd. of Arlington*, 232 S.E.2d 30, 39 (Va. 1977)).

The plain text of the statute fails to support Defendants' argument, and the principle they cite does nothing to support their interpretation. The language of the statute makes clear that a supervisor's continuing contract status should not be read to *prohibit* a school board from reassigning such individuals to teaching positions; it does not *require* all such reassignments to be to teaching positions. Further, Superintendent Schuch's recommendation letter itself—the authenticity of which the parties do not dispute and the Court considers central to the amended complaint, *see Wittholn v. Fed. Ins. Co.*, 164 F. App'x 395, 396 (4th Cir. 2006)—makes no mention of Va. Code Section 22.2-294(C) or any obligation under Virginia law other than Plaintiff's statutory right to "an informal meeting with either the School Board or me or my designee." Dkt. 8, Ex. 5. Instead, after reviewing the text of Schuch's second demotion recommendation letter, he states that the reasons for the recommended demotion include Plaintiff's "unwillingness to effectively understand and support the organizational structure of the school division. Additionally, your attitude and personal interactions with many school division leaders have created a professional climate that limits collaboration and impedes progress in implementing the BCPS strategic plan." *Id.*

After defusing Defendants' claim that the demotion to a teaching position was required under Virginia law and after declining to infer that Plaintiff rejected the principal position, the Court concludes that Plaintiff has sufficiently pleaded allegations to demonstrate a causal link

between Plaintiff's filing of sexual discrimination allegations and the subsequent demotion recommendation and reassignment. Not only were Defendants aware that Plaintiff had filed a formal grievance with the school board, the adverse action was sufficiently close in time to the filing of that grievance. *Cf. Lewis*, 187 F. Supp. 3d at 596.

As Defendants contend, it is clear from the allegations that that the process to remove her from her Deputy Superintendent post began before she filed her claim with the school board. But only one business day after the independent report on Plaintiff's sexual discrimination allegations had been submitted to the school board, Schuch signed a second letter *further* demoting Plaintiff to a teaching position. As Plaintiff has alleged, this was "a role that she had not held for more than two decades." Dkt. 8 at ¶ 63. And, as it would happen, the School Board demoted her to a teaching position when it reassigned her to an "instructional coach" role, in line with his recommendation.[6]

While there are no allegations that Plaintiff expressly accepted the initial reassignment, there are also no allegations that suggest she rejected it. Indeed, there is no indication in the amended complaint that any circumstances changed in the twenty-nine days between the date her principal contract is dated, Dkt. 8, Ex. 3, and the date of the letter recommending her demotion to a teaching position, Dkt. 8, Ex. 5—other than the release of the independent report. Plaintiff's decision to file sex-based discrimination charges with the board, Schuch's demotion recommendation, and her subsequent demotion to "instructional coach" bear a close temporal proximity to one another, evincing the requisite causal connection between the events. *Laing v. Fed. Exp. Corp.*, 703 F.3d 713, 720 (4th Cir. 2013) (holding that "the close temporal proximity between plaintiff's suspension and "her return from medical leave and termination within the

---

[6] Defendants make clear that an "instructional coach" is "a type of teaching position." Dkt. 10 at 7 n.5. They do their argument no charity by highlighting how Plaintiff's salary reduction was not as significant as it would have been if she were to have been reassigned to a "regular teaching position." *Id.*

month . . . is sufficient to establish the requisite causal nexus").

As Plaintiff has sufficiently pleaded factual allegations to support each element of a retaliation claim under Title VII, the Court will deny Defendants' motion to dismiss as to this claim.

### c. Count II: § 1983 Claim Against Dr. Douglas Schuch[7]

The Fourth Circuit has held that where a state or municipal employee files suit against a public entity alleging employment discrimination on the basis of an enumerated characteristic, Title VII is not the exclusive remedy. *Holder v. City of Raleigh*, 867 F.2d 823, 828 (4th Cir. 1989). Rather, such employees "may still bring Fourteenth Amendment challenges under 42 U.S.C. § 1983 to discriminatory employment decisions." *Id.*; *see Wilcox v. Lyons*, No. 7:17-cv-000530, 2018 WL 1955826, at *1 (W.D. Va. April 25, 2018) (Urbanski, J.).

1. Disparate treatment claim based on Schuch's recommendation that Plaintiff be demoted to a principal position

The Fourth Circuit has found that "the equal protection clause confers on a public employee a federal constitutional right to be free from gender discrimination." *Beardsley v. Webb*, 30 F.3d 524, 530–31 (4th Cir. 1994). The elements required to establish a prima facie case of discrimination under § 1983 are the same as those under Title VII. *Briggs v. Waters*, 455 F. Supp. 2d 508, 519 (E.D. Va. 2006) (citing *Gairola v. Va. Dep't of Gen. Servs.*, 753 F.2d 1281, 1285 (4th Cir. 1985)). As the elements are the same, the Court will grant Defendant's motion to dismiss as to Count II's disparate treatment claims against Schuch in his individual capacity, without prejudice and with leave to amend, for the reasons provided in Subsection III.B.1 of this Memorandum Opinion.

---

[7] Schuch contends that he is entitled to qualified immunity for his actions. As the Court has dismissed both claims against him, it need not reach a conclusion as to whether he would be protected from suit by qualified immunity.

2. Retaliation claim based on Schuch's recommendation that Plaintiff be demoted to a teaching position

The Court now turns to Plaintiff's retaliation claim against Schuch, pursuant to § 1983. Plaintiff claims that Schuch retaliated against Plaintiff for filing sex discrimination charges with the school board by recommending that she be demoted to a teaching position, thereby violating the Equal Protection Clause of the Fourteenth Amendment. Because retaliation claims like Plaintiff's are not plausibly considered violations of the Equal Protection Clause, her claim will be dismissed.

The Equal Protection Clause of the Fourteenth Amendment protects an individual's right to be free from sexual discrimination, including sexual harassment. But, in this Circuit, it is generally the First Amendment, not the Fourteenth, that provides protection from retaliation for speaking out against such a violation. *See, e.g., Martin v. Duffy*, 858 F.2d 239, 252 (4th Cir. 2017) (stating that "Martin's claim that Duffy treated him differently than other inmates who had similar grievances, *in retaliation* for Martin exercising his right to petition for redress of grievances, is, at its core, a First Amendment Claim" and dismissing plaintiff's equal protection claim on these grounds); *Edwards v. City of Goldsboro*, 178 F.3d 231, 250 (4th Cir. 1999) (dismissing equal protection–based retaliation claim and stating that "[a] pure or generic retaliation claim, however, simply does not implicate the Equal Protection Clause") (internal citations omitted); *Beardsley*, 30 F.3d at 53 ("A violation of the First Amendment's protection of the right to speak out is a necessary predicate to a claim of pure retaliation in the context of adverse employment action after the claimant has voiced a grievance."); *Wilcox*, 2018 WL 1955826, at *1 (collecting cases); *Maupin v. Howard Cty. Bd. of Educ.*, No. 08-cv-2203, 2010 WL 9460565, at *10 (D. Md. July 15, 2010); *see also Vega v. Hempstead Union Free Sch. Dist.*, 801 F.3d 72, 80 (2d Cir. 2015) (holding retaliation claims alleging "adverse action because of a complaint of discrimination are actionable

under § 1983" through violation of the Equal Protection Clause).

The Court acknowledges that the Fourth Circuit has held that a plaintiff's "sole reliance on the Fourteenth Amendment without reference to an infringement of the First Amendment is not fatal to her claim of retaliation" in narrow circumstances where the sexual harassment continues after and concurrent with the retaliation, *Beardsley*, 30 F.3d at 530. But that is not the case before this Court.

In *Beardsley v. Webb*, the plaintiff faced overt sexual harassment from her supervisor until she spurned his sexual advances. 30 F.3d 524. After facing censure from his own superiors, the defendant dropped his sexual advances, but he continued "treat[ing] her adversely unlike the way he treated men subject to his command," even increasing the intensity of the discriminatory conduct[8] after the plaintiff reported him. *Id.* at 530. As the Fourth Circuit described the defendant's behavior in that case, Webb's conduct was "a mixture of retaliation and continued sexual harassment." *Id.*

In contrast, after Plaintiff filed her claim for sex-based discrimination with the school board, Schuch took on a purely retaliatory posture: he recommended she be further demoted to a teaching position. Plaintiff does not allege that any discriminatory conduct like that in *Beardsley* occurred concurrent and after this retaliatory act. In such cases of "pure retaliation," the violation of the First Amendment's protection of the right to speak out is a necessary predicate to the claim. *Williams v. Va. Dep't of Social Servs.*, No. 3:93-cv-688, 1995 WL 848699 at *24 (E.D. Va. Aug. 21, 1995). Both in briefing and when pressed at argument, Plaintiff's counsel failed to argue that

---

[8] After spurning his sexual advances, the defendant created "an objectively abusive work environment" by regularly criticizing her performance," "questioning her orders to her subordinates," and by "bypassing the chain of command by giving orders to them directly." The defendant's behavior continued despite the plaintiff's censure, increasing to the point where the defendant in that case prompted unnecessary and inappropriate investigations into the plaintiff's own conduct. *Beardsley*, 30 F.3d at 528–29.

Schuch's conduct violated any constitutional right but her right to equal protection of the laws.

At its core, Plaintiff's claim is a free-speech retaliation claim that does not implicate the Equal Protection Clause. *See Kirby v. City of Elizabeth City*, 388 F.3d 440, 447 (4th Cir. 2004). Because Plaintiff has failed to state a retaliation claim under § 1983 against Schuch, the Court will grant Defendant's motion to dismiss this claim as well, without prejudice and with leave to amend.

### d. Plaintiff's Objection to the Motion to Dismiss

Plaintiff also filed an objection to Defendant's motion to dismiss, seeking its withdrawal, because Defendants did not schedule a hearing within sixty days of filing their motions, pursuant to Local Rule 11(b). Dkt. 19. Under Local Rule 11(b), "unless otherwise ordered, a motion is deemed withdrawn if the movant does not set it for hearing (or arrange to submit it without a hearing) within 60 days after the date on which the motion is filed." But as this Court has noted before, Rule 11(b) only states that motions are deemed withdrawn "unless otherwise ordered." In curing violations of Rule 11(b), this Court retains its inherent power to impose sanctions as well as the authority to determine a motion without oral hearing pursuant to Fed. R. Civ. P. 78(b) and Local Rule 11(b). *Hawkins v. Fishbeck*, 301 F. Supp. 3d 650, 661 (W.D. Va. 2017) (Moon, J.).

Defendants' motion to dismiss was filed on June 7, 2019. Dkt. 4. The deadline for Defendants to set their motion for hearing was August 6, 2019, yet Defendants did not suggest potential hearing dates to Plaintiff until August 22, 2019, over two weeks after the August 6 deadline. This is despite Plaintiff's three inquiries, made weekly, in July 2019 as to Defendant's interest in and availability for a hearing on this motion. Dkt. 19 at 2. Defendants do not identify any cause for the delay in either their informal communications with the Court, Dkt. 19, Exs. 1–2, or their filed response to Plaintiff's objection, Dkt. 20. Rather, Defendants only argue that the Plaintiff has not been prejudiced by the timing of the hearing on this motion and that the Local

Rules and Federal Rules of Civil Procedure do not require the Court to deem the motion withdrawn. *Id.*

Defendant must show "excusable neglect" to justify the late arrangement to schedule a hearing on their motion. Fed. R. Civ. P. 6(b). Without providing any basis for their neglect, the Court is hard pressed to find such neglect "excusable." This is true particularly where, as here, the opposing party has not requested, nor received, any extra time for any of their filings. *Hawkins*, 301 F. Supp. 3d at 661.

The Court, however, does not consider Defendants' conduct here so grievous as to merit withdrawal of their motion to dismiss. *Cf. id.* (declining to deem a motion withdrawn despite defendants' failure to arrange a hearing within sixty days). Instead, the Court will assess attorney's fees on Defendants pursuant to its inherent judicial power. *United States v. Shaffer Equipment Co.*, 11 F.3d 450, 462 (4th Cir. 1993) ("Under the inherent power, a court may issue orders, punish for contempt, . . . assess attorney's fees, and dismiss actions.") Pursuant to the accompanying order, Defendants shall pay three hours at Plaintiff's counsel's hourly rate for costs related to Defendants' failure to timely arrange a hearing on its motion to dismiss the amended complaint.

## CONCLUSION

For the foregoing reasons, the Defendants' motion to dismiss will be granted in part and denied in part. As to Count I, the Court will dismiss without prejudice and with leave to amend Plaintiff's disparate treatment claim against Defendant Bedford County School Board. To the extent that Count I sets out a Title VII retaliation claim against Bedford County School Board, Defendants' motion to dismiss will be denied. The Court will dismiss without prejudice and with leave to amend Count II against Schuch in its entirety.

For Defendants' failure to arrange a hearing within sixty days of the motion's filing, the

Court will assess attorney's fees upon Defendants.

An appropriate Order will issue, and the Clerk of the Court is hereby directed to send a copy of this Memorandum Opinion to all counsel of record.

ENTERED this __3rd__ day of February, 2020.

NORMAN K. MOON
SENIOR UNITED STATES DISTRICT JUDGE