IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
LYNCHBURG DIVISION

CHERIE C. WHITEHURST,

      Plaintiff,

v.                                                     Case No. 6:19CV00010

BEDFORD COUNTY SCHOOL BOARD, et al.

      Defendants.

**MEMORANDUM IN SUPPORT OF
MOTION TO DISMISS SECOND AMENDED COMPLAINT**

Defendants Bedford County School Board ("School Board") and Dr. Douglas R. Schuch, by counsel, submit this memorandum in support of their Motion to Dismiss the Second Amended Complaint ("Second Amended Complaint" or "2nd Am. Compl.") pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.

This is the Defendants' third Motion to Dismiss in this action. Defendants filed a Motion to Dismiss in response to the Plaintiff's initial Complaint. ECF. No. 4. In apparent recognition that she had not stated any claims against the Defendants, the Plaintiff filed an Amended Complaint without waiting for a resolution of the Defendants' initial Motion to Dismiss. ECF. No. 8. The Defendants again filed a Motion to Dismiss, which the Court granted as to the disparate treatment claim in Count I and to the entirety of Count II. See ECF No. 34. The Second Amended Complaint is the Plaintiff's third attempt to allege facts sufficient to state a claim against the Defendants for disparate treatment and against Dr. Schuch for retaliation. Once again, the Plaintiff has failed to sufficiently plead these claims. The Court should therefore, once again, dismiss these claims. As it is clear that the Plaintiff cannot make the allegations necessary

1

to state these claims, the disparate treatment claim in Count I and the entirety of Count II should be dismissed this time with prejudice and without further leave to amend.

## INTRODUCTION

On May 16, 2018, Dr. Schuch, the Division Superintendent of Bedford County Public Schools, notified the Plaintiff, Dr. Cherie Whitehurst, that she was being removed from her position as Deputy Superintendent.  2nd Am. Compl., ¶ 47.  The reasons for the Plaintiff's removal included her "unwillingness to effectively understand and support the organizational structure of the school division" and because her "attitude and personal interactions with many school division leaders [] created a professional climate that limits collaboration and impedes progress in implementing the BCPS strategic plan."  2nd Am. Compl., ¶ 70.

The Plaintiff and Dr. Schuch worked closely together for many years prior to her removal.  2nd Am. Compl., generally.  And while she now claims that Dr. Schuch allegedly engaged in discriminatory behaviors "[o]ver the course of nine years," 2nd Am. Compl., ¶ 23, she never made any formal complaint against Dr. Schuch until <u>after</u> he notified her of his intent to remove her from her position.  Only after being informed of Dr. Schuch's intent to remove her did the Plaintiff file an internal discrimination complaint against Dr. Schuch.  2nd Am. Compl., ¶¶ 47, 63.  Then, after the School Board formally voted to reassign her as recommended by Dr. Schuch, she filed a Charge of Discrimination with the U.S. Equal Employment Opportunity Commission ("EEOC").  2nd Am. Compl., ¶ 8.

Not only does the timing of the Plaintiff's claims—after receiving notice of her proposed removal—call them into question, but also the alleged discriminatory and retaliatory acts are not actionable under Title VII or 42 U.S.C. § 1983.  For all of the reasons set forth below, the

disparate treatment claim in Count I (against the School Board) and the entirety of Count II

(against Dr. Schuch) of Plaintiff's Second Amended Complaint must be dismissed.

## ARGUMENT

### I.     Standard of Review

To survive a motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil

Procedure, a plaintiff "must establish 'facial plausibility' by pleading 'factual content that allows

the court to draw the reasonable inference that the defendant is liable for the misconduct

alleged.'" Wag More Dogs, LLC v. Cozart, 680 F.3d 359, 364–65 (4th Cir. 2012) (quoting

Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009)).  Thus, "[a]t bottom, a plaintiff must 'nudge [his]

claims across the line from conceivable to plausible' to resist dismissal."  Id. at 364–65 (quoting

Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)).  The complaint must contain sufficient

facts "to raise a right to relief above the speculative level" and "state a claim to relief that is

plausible on its face."  Twombly, 550 U.S. at 555, 570.  Although a complaint need not contain

detailed factual allegations, it must contain more than "labels and conclusions" and "a formulaic

recitation of the elements of a cause of action will not do."  Id. at 555.

When considering the legal sufficiency of the complaint, the court "must accept the well-

pled facts in the complaint as true and make all reasonable inferences in the plaintiff's favor."

Elitharp-Martin v. Pulaski Cnty, Sch. Bd., 62 F. Supp. 3d 515, 518 (W.D. Va. 2014) (quoting

Twombly, 550 U.S. at 570).  The court is not, however, required to accept Plaintiff's legal

conclusions as true.  See Supinger v. Virginia, 167 F. Supp. 3d 795, 810 (W.D. Va. 2016) ("It is

well established that 'courts are not bound to accept as true a legal conclusion couched as a

factual allegation.'" (quoting Twombly, 550 U.S. at 555)); Hinton v. Virginia Union Univ., 185

F. Supp. 3d 807, 814 (E.D. Va. 2016) ("Nor is the court required to accept as true a legal

conclusion unsupported by factual allegations.") (citing Iqbal, 556 U.S. at 678–79).

## II.     The Second Amended Complaint fails to state a claim for relief against the Defendants for disparate treatment.

In Count I, the Plaintiff asserts a claim for disparate treatment against the School Board

pursuant to Title VII.  In Count II, the Plaintiff asserts a claim for disparate treatment against Dr.

Schuch pursuant to 42 U.S.C. § 1983.  The factual allegations underlying the disparate treatment

claims in Count I and Count II are the same and, therefore, the grounds for dismissal are the

same.  See Holder v. City of Raleigh, 867 F.2d 823, 828 (4th Cir. 1989) ("Our analysis with

respect to Title VII also governs plaintiff's claims under . . . [§] 1983.").

In the Second Amended Complaint, the Plaintiff claims that she was subjected to

disparate treatment based on her sex in three ways.[1]  First, the Plaintiff alleges that Dr. Schuch

refused to eat alone with her but not with her male counterparts.  2nd Amend. Compl., ¶ 29.

Second, the Plaintiff alleges that Dr. Schuch prohibited her from "speaking directly with the

subordinates of her fellow chief officers but allowed these male counterparts to communicate

directly and freely with her subordinates."  2nd Amend. Compl., ¶ 29.  Finally, the Plaintiff

alleges that Dr. Schuch recommended that the Plaintiff be demoted.  2nd Amend. Compl., ¶¶ 86,

91.

To establish a disparate treatment claim, the Plaintiff must demonstrate "(1) she is a

member of a protected class; (2) she has satisfactory job performance; (3) she was subjected to

---

[1] The Plaintiff has alleged different claims of disparate treatment in each version of her complaint.  In the original Complaint, the Plaintiff's claims of disparate treatment also included Dr. Schuch's alleged refusal to eat lunch with her and comments that he allegedly made to or about her.  Comp., ¶¶ 26, 28, 30, 32, 75, 80.  The Amended Complaint abandoned those claims and only alleged that she was subjected to disparate treatment when Dr. Schuch recommended that she be demoted.  Am. Compl., ¶¶ 79, 84.

adverse employment action; and (4) similarly situated employees outside the protected class received more favorable treatment." Stevens v. Va. Dep't of Corrections, No. 4:18-cv-00052, 2018 WL 6576407, *2 (W.D. Va. Dec. 13, 2018) (citing Prince-Garrison v. Md. Dep't of Health & Mental Hygiene, 317 Fed. Appx. 351, 353 (4th Cir. 2009)).  As demonstrated below, Plaintiff has not alleged sufficient facts to make out a claim of disparate treatment based on any of these three alleged instances of disparate treatment.  Accordingly, the disparate treatment claims against both the School Board and Dr. Schuch must be dismissed.

A.     **Dr. Schuch's alleged refusal to eat alone with the Plaintiff is not an adverse employment action.**

The Plaintiff cannot state a claim for disparate treatment with regard to her allegation that Dr. Schuch would not eat alone with her, 2nd Am. Compl., ¶ 29, because the alleged refusal does not constitute an adverse employment action.  To establish an adverse employment action, a plaintiff must allege facts showing that she has been "subjected to acts that adversely affect the terms, conditions, or benefits of their employment." Martin v. Merck & Co., Inc., 446 F. Supp.2d 615, 633 (W.D. Va. 2006).  Moreover, "[m]ere dissatisfaction fails to meet the standard; the plaintiff must show some significant detrimental effect." Forgus v. Mattis, 753 Fed. Appx. 150, 153 (4th Cir. 2018) (citing Holland v. Washington Homes, Inc., 487 F.3d 208, 219 (4th Cir. 2007)).  If the actions complained of do not have "any detrimental effect on pay, job title, responsibility, or promotion opportunities, nor any other significant negative consequence, they do not support a discrimination claim." Martin, 446 F. Supp. 2d at 634.  A supervisor's refusal to eat alone with an employee does not adversely affect the "terms, conditions, or benefits" of employment and is not a "significant detriment."

The Plaintiff does not allege any facts to support the conclusion that Dr. Schuch's refusal to eat alone with the Plaintiff had a detrimental effect on her "pay, job title, responsibility, or

promotion opportunities." Id.  The Plaintiff's statement that Dr. Schuch's actions "put her at a distinct disadvantage with respect to the development of her professional relationship with Schuch," 2nd Am. Compl., ¶ 29, is "mere dissatisfaction" with her working situation, not a "significant detrimental effect" on the terms, conditions, or benefits of her employment. Moreover, the Plaintiff alleges no facts to support the self-serving conclusory statement about the effect that Dr. Schuch's alleged refusal had on the Plaintiff.  In such cases, the Plaintiff's allegations are not entitled to the presumption of truth.  See Iqbal, 556 U.S. at 678 ("Nor does a complaint suffice if it tenders "naked assertion[s]" devoid of "further factual enhancement." (quoting Twombly, 550 U.S. at 557)).  Accordingly, this claim fails.

**B.     Dr. Schuch's alleged prohibition of Plaintiff speaking with others' subordinates is not an adverse employment action.**

The Plaintiff cannot state a claim for disparate treatment based her allegations that Dr. Schuch prohibited her from "speaking directly with the subordinates of her fellow chief officers but allowed these male counterparts to communicate directly and freely with her subordinates," 2nd Amend. Compl., ¶ 29, because the alleged prohibition does not constitute an adverse employment action.  As with her allegation that Dr. Schuch refused to eat alone with her, the Plaintiff's allegation regarding this prohibition describes "mere dissatisfaction" with her working situation, not a "significant detrimental effect" on the terms, conditions, or benefits of her employment.  See Forgus, 753 Fed. Appx. at 153; Martin, 446 F. Supp.2d at 633.  The Plaintiff alleges no facts to demonstrate how this situation had "any detrimental effect on pay, job title, responsibility, or promotion opportunities, nor any other significant negative consequence." Martin, 446 F. Supp. 2d at 634.  Without such allegations, the Plaintiff has failed to state a claim for disparate treatment based on Dr. Schuch's alleged prohibition of her speaking to the subordinates of other chief officers.

**C.**      **The Plaintiff has not alleged that similarly situated employees outside of the protected class received more favorable treatment when she was demoted.**

In the Second Amended Complaint, the Plaintiff again alleges that she was subjected to disparate treatment when Dr. Schuch recommended that she be demoted to Principal for the 2018–2019 school year.  2d Am. Compl. ¶¶ 86, 91.  As before, the Plaintiff's claim fails because she still has not alleged facts sufficient to show that similarly situated males received more favorable treatment.  To be a proper comparator, the other employee "must be 'similarly situated' in all relevant respects."  Crawford v. Dep't of Corr. Educ., No. 3:11CV430-HEH, 2011 WL 5975254, at *6 (E.D. Va. Nov. 29, 2011), aff'd, 472 F. App'x 192 (4th Cir. 2012), (citing Tex. Dep't of Cmty. Affairs v. Burdine, 450 U.S. 248, 258 (1981)).  Among the criteria to determine who is similarly situated, the plaintiff must show that the other employee "engaged in the same conduct without such differentiating or mitigating circumstances that would distinguish their conduct or the employer's treatment of them for it."  Haynes v. Waste Connections, Inc., 922 F.3d 219, 223–24 (4th Cir. 2019) (quoting Haywood v. Locke, 387 F. App'x 355, 359 (4th Cir. 2010)).

In her Second Amended Complaint, the Plaintiff still has not alleged that her purported comparators, the chief financial officer and chief operations officer, engaged in the same conduct.  The Plaintiff alleges that she told Dr. Schuch that a statement he made during a job interview—in which both he and the Plaintiff were present—"was inappropriate and could easily be construed as offensive by a candidate."  2nd Am. Comp. ¶ 45.  The Plaintiff alleges that in doing so, "she had called Schuch out for his inappropriate line of questioning."  2nd Am. Comp. ¶ 52.  Thus, the Plaintiff describes her conduct as confronting Dr. Schuch about his personal behavior in a work situation that she deemed inappropriate.  In contrast, the Plaintiff merely alleges that she "had observed the chief financial officer and chief operations officer disagree

7

with Schuch or offer constructive feedback in meetings in which she had been included, but . . . Schuch never took adverse action against them for such behavior."  2nd Am. Comp. ¶ 55.

The Plaintiff's attempts to equate her confrontation with Dr. Schuch regarding his personal behavior with her colleagues' disagreement or offering constructive feedback in group meetings fall far short of establishing that they engaged in the same conduct.  "Calling out" one's direct supervisor and accusing him of "inappropriate" behavior, which is how Plaintiff characterized her own behavior, is not the same conduct as disagreeing with or offering constructive feedback to one's supervisor in a meeting, which is how Plaintiff characterized her colleagues' alleged behavior.

Moreover, the Plaintiff does not provide any facts about the content of her colleagues' alleged disagreement or constructive feedback to demonstrate that it was of the same kind as her confrontation of Dr. Schuch, for his allegedly inappropriate personal behavior.  Furthermore, although the Plaintiff alleges that she confronted Dr. Schuch "[at] an appropriate time and in an appropriate setting," 2nd Am. Comp. ¶ 45, she provides no factual details to support this conclusory assertion.  Her allegations that the circumstances of her confrontation with Dr. Schuch are "appropriate" are therefore not entitled to the presumption of truth.  See Iqbal, 556 U.S. at 678 ("Nor does a complaint suffice if it tenders "naked assertion[s]" devoid of "further factual enhancement." (quoting Twombly, 550 U.S. at 557)).  Accordingly, the Plaintiff does not demonstrate that her "calling out" of Dr. Schuch occurred under the same circumstances as "disagreement and constructive feedback" provided by the other chief officers and so has not shown that they "engaged in the same conduct without such differentiating or mitigating circumstances that would distinguish their conduct."  See Haynes, 922 F.3d at 223–24.

Because the Plaintiff has failed to allege facts to show that similarly situated male employees received more favorable treatment, her disparate treatment claims must be dismissed. See, e.g., Prince-Garrison, 317 Fed. Appx. at 354 ("Because Prince-Garrison failed to identify a fellow employee who engaged in misconduct similar to hers or was disciplined in any way, the district court correctly dismissed this claim."); Cooper v. Smithfield Packing Co., Inc., 724 F. App'x 197, 201–02 (4th Cir. 2018) (affirming dismissal of "First Amended Complaint [because it] failed to allege sufficiently that she suffered an adverse employment action or that similarly situated employees outside of her protected class received more favorable treatment to state a claim for disparate treatment.").

### III.   The Second Amended Complaint fails to state a claim for relief against Dr. Schuch for retaliation.

In addition to the disparate treatment claim, Count II also asserts a claim for retaliation against Dr. Schuch pursuant to 42 U.S.C. § 1983.  In particular, the Plaintiff alleges that Dr. Schuch retaliated against her for filling her discrimination complaint by reassigning her to a teaching position, rather than a principal position, in violation of her First Amendment right to petition for redress of grievances.  2d Am. Compl., ¶¶ 69, 73, 93.  Because the Plaintiff is a public employee, her claim is subject to a different standard than a First Amendment claim filed by a member of the general public.  Cannon v. Vill. of Bald Head Island, 891 F.3d 489, 497 (4th Cir. 2018) ("[A] governmental employer may impose certain restraints on the speech of its employees, restraints that would be unconstitutional if applied to the general public." (quoting City of San Diego v. Roe, 543 U.S. 77, 80 (2004)).  To establish a retaliation claim under § 1983, a public employee must show that (1) the "employee was speaking as a citizen upon a matter of public concern"; (2) "the employee's interest in speaking about the matter of public concern outweighed the government's interest in managing the working environment"; and (3) the

9

employee's speech was a "substantial factor" in the employer's conduct.  See Brooks v. Arthur,

685 F.3d 367, 371 (4th Cir. 2012).  The retaliation claim against Dr. Schuch must be dismissed

because the Plaintiff has not alleged facts to support each of the elements of a retaliation claim

under § 1983.

> **A.    The Plaintiff has not alleged that her complaint addressed a matter of public concern.**

A public employee's right to petition for redress of grievances "is constitutionally

protected only when it addresses a matter of public concern."  Kirby v. City of Elizabeth City,

388 F.3d 440, 448 (4th Cir. 2004).  Thus, an employee is not engaging in a protected First

Amendment activity when her petition is made "as an employee about a matter of personal

interest."  See Brooks, 685 F.3d at 371.  In determining whether an employee is addressing a

matter of public concern, the courts consider the "content, form, and context of a given

statement."  Id. (quoting Connick v. Myers, 461 U.S. 138, 147–48 (1983)).  It is not the case

"that all matters which transpire within a government office are of public concern."  Id. (quoting

Connick, 461 U.S. at 149).  A matter is likewise not one of public concern even if the subject

matter would arouse interest among members of the public in the locality.  See Baker v. McCall,

842 F. Supp. 2d 938, 950 (W.D. Va. 2012) ("Even if the subject of the conversation would

arouse interest in the small town . . . , 'the mere fact that the topic of the employee's speech was

one in which the public might or would have had a great interest is of little moment.'" (quoting

DiMeglio v. Haines, 45 F.3d 790, 805 (4th Cir. 1995)).  Reviewing the content, form, and

context of the Plaintiff's petition here leads to the inescapable conclusion that the Plaintiff's

complaint to the School Board did not address a matter of public concern, and so her retaliation

claim against Dr. Schuch must be dismissed.

First, the Plaintiff provides scant detail in the Second Amended Complaint about the content of her internal discrimination complaint to the School Board.  She merely alleges that she "filed a claim of sex-based discrimination with BCSB, outlining the sustained pattern of discrimination by Schuch that she had endured over the previous nine years and, specifically, the discriminatory act of demoting her."  2nd Am. Compl., ¶ 63.  It is not enough that the Plaintiff describes her internal complaint as a claim of sex-based discrimination because "a complaint about sexual harassment or discrimination is not always a matter of public concern."  Campbell v. Galloway, 483, F.3d 258, 268 (4th Cir. 2007)).  Other than referencing the demotion, the Plaintiff's description of her internal complaint provides no factual details of specific instances articulated in the complaint to enable the Court to determine that the Plaintiff's speech was a matter of public concern.  In such a case, the Plaintiff has failed to plead a claim for First Amendment retaliation, and the claim must be dismissed.  See Supinger, 167 F. Supp. 3d at 814–15 (granting motion to dismiss First Amendment retaliation claim when plaintiff did not allege facts sufficient to show that speech was about a matter of public concern).

Second, the form of the Plaintiff's sex discrimination complaint also shows that she was not speaking on a matter of public concern.  When a public employee files a petition with her employer using an internal grievance procedure, she "does not seek to communicate to the public or advance a political or social point of view beyond the employment context."  Brooks, 685 F.3d at 373 (quoting Borough of Duryea v. Guarnieri, 564 U.S. 379, 398 (2011)).  In so doing, the employee indicates she "simply does not speak with the civic intent necessary to invoke the First Amendment."  Id.  Here, the Plaintiff filed her internal discrimination complaint with the School Board.  2nd Am. Compl., ¶ 63.  She did not initially file it with the EEOC.  She did not write to a newspaper, make an online posting to a public forum, give testimony at a public

meeting, or otherwise attempt to inform the public generally about alleged sex discrimination. See Crouse v. Town of Moncks Corner, 848 F.3d 576, 585–86 (4th Cir. 2017) (noting that plaintiffs' speech was "not an effort to participate in a larger public dialogue" when it was "not, for example, a letter to a newspaper, or an online posting contributing to a public discussion, or testimony at a public meeting" (citations omitted)). By lodging her complaint internally with the School Board, the Plaintiff indicated she did not intend to raise the issue of Dr. Schuch's alleged behavior beyond an internal grievance related to her own employment situation.  In such circumstances, the Plaintiff's speech is not on a matter of public concern.

Third, the context of the Plaintiff's claim further shows that it was not related to a matter of public concern but rather was a personal grievance.  The Plaintiff alleges that she endured nine years of "bullying and unfair treatment" on the basis of sex, 2nd Am. Compl., ¶ 23, but she did not file her internal complaint with the School Board until after Dr. Schuch recommended that she be demoted to principal in May 2018.  2nd Am. Compl., ¶¶ 47–48, 63.  This context is not indicative of an individual speaking out against sex discrimination, but of an employee maneuvering to preserve her job.  The Plaintiff did not seek to inform the public that school officials were not discharging their government responsibilities or to bring to light a breach of public trust.  See Brooks, 685, F3d. at 373 (finding that employee's comments were "complaints of a purely private nature" when they did not seek to inform the public about misdeeds by government officials).

Indeed, the other specific allegations of sex-based discrimination in the Second Amended Complaint leading up to her internal complaint to the School Board all indicate that the Plaintiff's complaint is a personal grievance about her own employment situation.  The Plaintiff alleges that she "began to feel marginalized by Schuch, whose internal reorganization process

shifted responsibilities away from her position and to men that held subordinate roles." 2nd Am. Compl., ¶ 26. The Plaintiff also alleges that Dr. Schuch refused to dine alone with her, which "put her at a distinct disadvantage with respect to the development of her professional relationship with Schuch." 2nd Am. Compl., ¶ 29. In addition, she alleges Dr. Schuch prohibited her from "speaking directly with the subordinates of her fellow chief officers but allowed these male counterparts to communicate directly and freely with her subordinates." 2nd Am. Compl., ¶ 29. The Plaintiff further alleges that Dr. Schuch, over a period of nine years, occasionally made allegedly derogatory comments about women, directed at the Plaintiff. 2nd Am. Compl., ¶¶ 30–36. Finally, the Plaintiff alleges that Dr. Schuch referred her to the employee assistance program ("EAP"), which caused the Plaintiff to resign from the EAP's board of directors because of "embarrassment." 2nd Am. Compl., ¶¶ 37, 39. For each of these specific instances, the Plaintiff explicitly notes how the alleged behavior targeted <u>her</u>, affected <u>her</u> professional development, or made <u>her</u> feel.

The Plaintiff's complaint is in notable contrast to other instances in which public employees were held to be speaking on a matter of public concern. In <u>Campbell v. Galloway</u>, a female police officer's allegations of sexual harassment and gender discrimination also included complaints of inappropriate conduct directed toward other women, including members of the public. 483 F.3d 258, 270 (4th Cir. 2007). Because the complaining officer "did not bring [attention] to the sexual harassment issues . . . in order to resolver her own personal problem" but rather "was seeking to challenge the practice within the department as much as she was seeking a resolution of her own complaint," the court held she was speaking on a matter of public concern when she made her complaint. <u>Id.</u>

Similarly, in Cromer v. Brown, the court concluded that a group of African-American police officers were speaking on a matter of public concern when they filed a letter of complaint with their supervisor related to racial discrimination because the "specific complaints prompted an expression of concern about the inability of the sheriff's office to carry out its public mission effectively" and because the letter was a group complaint, "not the expression of a single disgruntled employee about a personal employment dispute." 88 F.3d 1315, 1325–26 (4th Cir. 1996).

Additionally, in Love-Lane v. Martin, an assistant principal was speaking on a matter of public concern when she spoke out against racially discriminatory disciplinary practices that specifically harmed African-American children and did so at times and places that included meetings specifically designed to address the needs of those same children. 355 F.3d 766, 776–77 (4th Cir. 2004). The court found that "[t]his speech did not relate to a private issue between Love-Lane and her employer. Rather, . . . it dealt with an issue of major concern to many in the [] school community, including teachers, parents, and students." Id. at 777.

In each of these instances, the public employee's complaints focused on the discrimination faced by others, addressed the ability of the government agency to effectively provide its services to the public, and represented the concerns of more than the single, complaining employee. Unlike the plaintiffs in Campbell, Cromer, and Love-Lane, here the Plaintiff, by contrast, focuses only on herself. Her complaint relates to the "mere allegations of favoritism . . . and other complaints of interpersonal discord" that courts must not treat as "matters of public policy." Goldstein v. Chestnut Ridge Volunteer Fire Co., 218 F.3d 337, 352 (4th Cir. 2000); see also, Brooks, 685 F.3d at 372 (finding public employee's complaint of racial and religious discrimination in the workplace did not address matters of public concern because

14

plaintiff's complaint "pertained to personal grievances and complaints about conditions of employment rather than broad matters of policy meriting the protection of the First Amendment").

In sum, the content, form, and context of the Plaintiff's complaint, as alleged in the Second Amended Complaint simply do not allow for the conclusion that the Plaintiff's sex discrimination complaint to the School Board was a petition speaking to a matter of public concern.  Accordingly, she has not stated a claim for retaliation under the First Amendment, and the retaliation claim against Dr. Schuch must be dismissed.  See Brooks, 685 F.3d at 371.

**B.      The Plaintiff's interest in speaking does not outweigh the government's interest in managing the working environment.**

Even if the Plaintiff were speaking to a matter of public concern when she filed her complaint with the School Board, which she was not, the First Amendment retaliation claim must still be dismissed because the Plaintiff's interest in speaking does not outweigh the government's interest in managing the working environment.

In weighing these competing interests, courts engage in Pickering balancing.  Crouse, 848 F.3d at 583 (citing Pickering v. Bd. of Educ., 391 U.S. 563, 568, (1968)).  Relevant factors include:

> whether the employee's speech (1) impairs the ability of supervisors to mete out discipline, (2) impairs harmony among co-workers, (3) damages close working relationships, (4) impedes the performance of the public employee's duties, (5) interferes with the operation of the agency, (6) conflicts with the responsibilities of the employee within the agency, and (7) is communicated to the public or to co-workers in private.

Love-Lane, 355 F.3d at 778.

The Pickering factors each point to the government's interest outweighing the Plaintiff's in this case.  The Plaintiff filed her complaint with School Board just after Dr. Schuch informed

her she would be removed from the deputy superintendent position and reassigned to a principal position.  Such a response upsets Dr. Schuch's ability to discipline the School Board employees because it impedes the reassignment process and creates an adversarial environment that rewards defiance.  See Crouse, 848 F.3d at 587 (noting that "[t]he chain of command would be left in tatters if subordinates tried to stir up litigation against supervisors with whom they, for whatever reason, did not get along").  A complaint by the Deputy Superintendent about how the Superintendent treated her—especially after the two had worked together closely for nine years—naturally impairs harmony among co-workers up and down the organizational hierarchy and damages close working relationships.  The Plaintiff's complaint, coming on the heels of her learning of her reassignment, interferes with the operations of the school division and prevents Dr. Schuch from organizing the school division's senior staff in the way that is most efficient for the operations of the school division.  In addition, the Plaintiff alleges that her complaint should have removed Dr. Schuch from his position and cut off his access to the School Board and its employees.  See 2nd Am. Compl., ¶¶ 63–65.  The temporary removal of the Superintendent certainly would interfere with the operation of the school division and conflict with the Plaintiff's responsibilities within the school division.  In the wake of her complaint to the School Board, the Plaintiff missed a significant amount of work, which impeded the performance of her duties and conflicted with her responsibilities within the school division.  Additionally, the Plaintiff's complaint to the School Board was not made in private between co-workers, but was made to the School Board, which resulted in an investigation that consumed valuable resources that could have been spent elsewhere.

Not only do the Pickering factors weigh in favor of the government, courts have noted that where, as here, "a public employee's expression is in furtherance of matters of personal

concern," the employer's burden in the balancing test "is lessened."  Crouse, 848 F.3d at 586

(quoting Joyner v. Lancaster, 815, F.2d 20, 24 (4th Cir. 1987)).  Because the Plaintiff's interest

in speaking does not outweigh the government's interest in managing the working environment,

the Plaintiff's First Amendment retaliation claim must be dismissed.

>    **IV.    Dr. Schuch is entitled to qualified immunity for both claims against him.**

Even if the Plaintiff's claims are not dismissed in their entirety against both Defendants,

the claims against Dr. Schuch must still be dismissed because he is entitled to qualified

immunity.  Qualified immunity protects government officials from liability for civil damages in a

§ 1983 action "insofar as their conduct does not violate clearly established statutory or

constitutional rights of which a reasonable person would have known."  Harlow v. Fitzgerald,

457 U.S. 800, 818 (1982). "Because qualified immunity is 'an immunity from suit rather than a

mere defense to liability . . . it is effectively lost if a case is erroneously permitted to go to

trial.'"  Pearson v. Callahan, 555 U.S. 223, 231 (2009) (citation omitted).  "Indeed, we have

made clear that the 'driving force' behind creation of qualified immunity doctrine was a desire to

ensure that 'insubstantial claims against government officials [will] be resolved prior to

discovery.'"  Id. (citation omitted).  "Accordingly, 'we repeatedly have stressed the importance

of resolving immunity questions at the earliest possible state in litigation.'"  Id. at 232 (citation

omitted).

The purpose of the qualified immunity doctrine is to "allow some room for discretionary

judgment in what are indisputably difficult circumstances and not to have the prospect of being

blind-sided in hindsight discourage officers from the constructive tasks they can in fact perform."

Melgar v. Greene, 593 F.3d 348, 357 (4th Cir. 2009).  Thus, government officials "will not be

held liable, even if they violate statutory or constitutional rights, unless they had prior guidance

which would allow them to determine that their contemplated action was improper." Id. Qualified immunity shields government officials from suits for actions that "would amount to 'bad guesses in gray areas.'" Conley v. Town of Elkton, 381 F. Supp. 2d 514, 524 (W.D. Va. 2005).

A government official is entitled to qualified immunity unless (1) the facts, when viewed in the light most favorable to the plaintiff, show that the official's conduct violated a constitutional right, and (2) the right violated was "clearly established" when the violation occurred. Henry v. Purnell, 501 F.3d 374, 376–77 (4th Cir. 2007) (quoting Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982)). A government official's conduct violates a clearly established right when "'[t]he contours of [a] right [are] sufficiently clear' that every 'reasonable official would [have understood] that what he was he is doing violates that right.'" Ashcroft v. al-Kidd, 563 U.S. 731, 741 (2011) (alterations in original) (quoting Anderson v. Creighton, 483 U.S. 635, 640 (1987)). In other words, "existing precedent must have placed the statutory or constitutional question beyond debate." Id.

The Plaintiff's entirely conclusory allegations that the Plaintiff's rights were clearly established, 2nd Am. Compl. ¶¶ 59, 73, need not be accepted as true in ruling on the motion to dismiss. See, e.g., Supinger, 167 F. Supp. 3d at 810; Hinton, 185 F. Supp. 3d at 814. Indeed, such conclusions are incorrect. For the same reasons that the disparate treatment claims must be dismissed as set forth above, see supra, Section II, it was not "clearly established" that these actions were unlawful at the time they were taken. In particular, it was not sufficiently clear to every reasonable officer in Dr. Schuch's position that refusing to eat alone with a subordinate or prohibiting a subordinate from speaking with others' subordinates was an adverse employment action. It was also not clearly established that Dr. Schuch should have known that "calling out"

18

one's direct supervisor for his personal behavior is the same behavior as disagreeing with or offering constructive feedback to one's supervisor in a meeting, such that Dr. Schuch would have known he was treating his employees differently for the same behavior. Therefore, Dr. Schuch is entitled to qualified immunity on the disparate treatment claim.

Likewise, the contours of the Plaintiff's First Amendment right to petition were not sufficiently clear that every reasonable officer in Dr. Schuch's position would have known his actions violated those rights. As demonstrated above, see supra, Section III, Dr. Schuch reasonably could have believed that the Plaintiff was not speaking as a citizen on a matter of public concern. Crouse, 848 F.3d at 584–85 (finding that an official is entitled to qualified immunity when it is unclear whether the employee is speaking as a citizen on a matter of public concern or as an employee). Similarly, Dr. Schuch reasonably could have believed that the Pickering balancing test favored the government in this case. See id. at 585 (an officer is entitled to qualified immunity when "the outcome of the Pickering balancing test is not 'beyond debate.'"; see also, DiMeglio, 45 F.3d at 806 ("[O]nly infrequently will it be 'clearly established' that a public employee's speech on a matter of public concern is constitutionally protected, because the relevant inquiry requires a 'particularized balancing' that is subtle [and] difficult to apply . . . ."). Therefore, Dr. Schuch is entitled to qualified immunity on the retaliation claim as well.

## **CONCLUSION**

WHEREFORE the Defendants Bedford County School Board and Dr. Douglas R. Schuch respectfully request that the Court enter an Order dismissing the disparate treatment claim in Count I and the entirety of Count II of Second Amended Complaint with prejudice and granting them such further relief as the Court may deem appropriate.

RESPECTFULLY SUBMITTED,

BEDFORD COUNTY SCHOOL BOARD
AND DR. DOUGLAS R. SCHUCH

By Counsel

 /s/ Stacy L. Haney
Stacy L. Haney, Esq. (VSB 71054)
HANEY PHINYOWATTANACHIP PLLC
11 S. 12th Street, Suite 300C
Richmond, VA 23219
Telephone: (804) 500-0301
Facsimile: (804) 500-0309
shaney@haneyphinyo.com
        Counsel for Bedford County School Board
        and Dr. Douglas R. Schuch

## CERTIFICATE OF SERVICE

I hereby certify that on this 27th day of February, 2020, I have electronically filed the

foregoing using the CM/ECF system, which will automatically send email notification of such

filing to counsel of record as follows:

> W. Huntington Byrnes
> Steven P. Gould
> BYRNES GOULD PLLC
> 312 Main Street, Suite 200
> P.O. Box 47
> Danville, VA 24543
> Telephone (434) 792-2424
> HByrnes@byrnesgould.com
> SGould@byrnesgould.com
>
> Counsel for Plaintiff


>  /s/ Stacy L. Haney
> Stacy L. Haney, Esq. (VSB 71054)
> HANEY PHINYOWATTANACHIP PLLC
> 11 S. 12th Street, Suite 300C
> Richmond, VA 23219
> Telephone: (804) 500-0301
> Facsimile: (804) 500-0309
> shaney@haneyphinyo.com
>> Counsel for Bedford County School Board
>> and Dr. Douglas R. Schuch