CLERKS OFFICE U.S. DIST. COURT
AT LYNCHBURG, VA
FILED

7/6/2020
JULIA C. DUDLEY, CLERK
BY:   s/ CARMEN AMOS
        DEPUTY CLERK

# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF VIRGINIA
### LYNCHBURG DIVISION

|  |  |
|---|---|
| CHERIE C. WHITEHURST, | CASE NO. 6:19-cv-00010 |
| *Plaintiff*, | |
| v. | MEMORANDUM OPINION |
| BEDFORD COUNTY SCHOOL BOARD, *et al.*, | |
| *Defendants.* | JUDGE NORMAN K. MOON |

## INTRODUCTION

Before the Court is Defendants Bedford County School Board and Dr. Douglas Schuch's motion to dismiss for failure to state a claim. Dkt. 36. Plaintiff Dr. Cherie C. Whitehurst's second amended complaint raises two counts, which share the same factual basis. In Count I, Plaintiff alleges that Bedford County School Board, acting through its division superintendent, Schuch, violated Title VII's disparate treatment and anti-retaliation provisions. In Count II, Plaintiff raises claims arising under 42 U.S.C. § 1983 against Schuch in his individual capacity. Plaintiff alleges that Schuch, acting under color of state law, violated her rights under the Equal Protection Clause by treating her differently than similarly situated male counterparts and violated her rights under the First Amendment by retaliating against her for filing a sex-based discrimination claim.

Defendant seeks dismissal of Plaintiff's disparate treatment claim under Count I against Bedford County School Board and the entirety of Count II against Schuch.[1] For the following

---

[1] Defendant does not seek dismissal of the Title VII retaliation claim against the school board under Count I, which this Court permitted to proceed in the same form on review of the motion to dismiss Plaintiff's first amended complaint.

reasons, the Court will grant in part and deny in part Defendants' motion to dismiss.

## I.   ALLEGED FACTUAL BACKGROUND

### A.   Background

Plaintiff Dr. Cherie Whitehurst began her career in Bedford County Public Schools in 1990. Dkt. 35 at ¶ 11. After serving in teaching positions from 1990 through the 1995–96 academic year, she began serving in school administration positions in Bedford County Public Schools. *Id*. at ¶¶ 11–12. In 2009, she was promoted to Assistant Superintendent of Bedford County Public Schools, *id.* at ¶ 14, and in 2014, she was again promoted, this time to Deputy Superintendent, *id.* at ¶ 16. At the time of her second promotion, Plaintiff also began serving as Bedford County School Board's Chief Academic Officer. *Id.* As Deputy Superintendent during the 2017–18 academic year, Plaintiff was to receive the following compensation: $123,015.00 in base salary, $6,151.00 in additional doctoral supplement, and $3,600.00 for an automobile entitlement, totaling $132,766. *Id.* at ¶ 17; Dkt. 35, Ex. 2 (salary agreement).

### B.   Alleged Discriminatory Comments

As Assistant Superintendent and, later, Deputy Superintendent, Plaintiff alleges that she reported directly to Superintendent Schuch. *Id.* at ¶ 20. During this time period, Plaintiff alleges specific quotes from Schuch's evaluations of Plaintiff's performance from 2010 through 2017 that were universally and intensely positive; a number of these even explicitly suggested that she was ready to "succeed as a school division superintendent." *Id.* at ¶ 21.

Plaintiff alleges, however, that during the same period she received Schuch's glowing reviews, she also was the object of "regular discriminatory actions and comments from Schuch" that would be "too numerous to catalogue fully." *Id.* at ¶¶ 22–24. She claims that such actions were taken despite the more favorable treatment provided to "her fellow chief officers" the chief

financial officer and chief operations officers, who were both male. *Id.* at ¶¶ 27–29.[2] Specifically, Plaintiff alleges Schuch refused to "dine alone" with Plaintiff, but not her male counterparts, which she contends "put her at a distinct disadvantage with respect to the development of her professional relationship with Schuch." *Id.* at ¶ 29. Further, Schuch permitted Plaintiff's fellow chief officers to "directly and freely" work with *Plaintiff's* subordinates, bypassing her authority, but prohibited her from doing the same, requiring Plaintiff to go through their chief officers. *Id.*

Additionally, Plaintiff alleges that Schuch has made various comments regarding "the inferiority of women in the workplace compared to men." *Id.* at ¶ 30. Specifically, she alleges Schuch stated, on two occasions, that Plaintiff and a female colleague of hers were "the only women on senior staff and how does it look for the two of you to be having problems?" *Id.* at ¶ 31. Plaintiff further alleges that on multiple occasions, when Plaintiff would question Schuch's rationale for a decision, he would respond that she was "cycling"—a reference to the female menstrual cycle—or state that "talking to you is like talking to my wife." *Id.* at ¶¶ 33–36.

Plaintiff alleges that she complained to the Bedford County School Board's human resources department about Schuch's comments in late 2016 but that—without consulting Plaintiff—those comments were shared with Schuch. *Id.* at ¶ 37. Schuch then made a referral for Plaintiff to enter Bedford County School Board's "employee assistance program" ("EAP"). *Id.* Because Plaintiff was a member of the EAP Board, the referral to EAP caused her significant embarrassment, and she consequently resigned from that post in January 2017. *Id.* at ¶ 39. Plaintiff

---

[2] As alleged in the complaint, the chief financial officer and chief operations officers were similarly situated to Plaintiff in a number of respects, including "each managing sizeable teams and being responsible for a discrete, crucial aspect of [the school board's] functioning; regularly working long hours and attending events, such as regular [school board] meetings, before and/or after normal work hours; and reporting directly to Schuch." Dkt. 35 at ¶ 28. She also alleges that the performance of the chief financial officer and chief operations officer in the 2017–2018 school year "either met or exceeded the expectations of Schuch" as hers did, based on her information and belief. *Id.* at ¶ 57.

alleges that Schuch used the EAP referral as punishment for "questioning his actions and reaffirming his view that women were overly emotional and unable to handle the stresses of the workplace." *Id.* at ¶ 38.

### C. Plaintiff's Demotion from Deputy Superintendent Position to Principal

On or about May 16, 2018, Plaintiff alleges that Schuch informed her that she was being removed from her position as Deputy Superintendent of Bedford County Public Schools. *Id.* at ¶ 47. Following up on her termination from her position, Plaintiff alleges that on May 21, 2018, Schuch conveyed to Plaintiff that she would be demoted to a school principal position for the 2018–19 academic year, again refusing to provide any specific reason for Plaintiff's demotion. *Id.* at ¶ 48. She claims that Schuch failed to cite any specific reason for her removal, noting only that her demotion was in the best interest of the school division. *Id.*

Importantly, Plaintiff alleges that this notice of demotion came the very next day after she challenged Schuch about the propriety of a question posed during an interview to a candidate for a school principal position. Specifically, Plaintiff alleges that, during the interview, Schuch questioned a white male candidate, stating as part of a question[3] that "[the outgoing principal] is a woman, you are a man; she is African American and you are white." *Id.* at ¶¶ 43–44. Plaintiff confronted Schuch about this question after the interview "at an appropriate time, and in an appropriate setting," explaining that his statement to the candidate was "inappropriate and could easily be construed as offensive." *Id.* at ¶ 45. Plaintiff compares her conduct to that of her alleged male counterparts, the chief financial officer and chief operations officer, stating that she had observed them "disagree with Schuch or offer constructive feedback in meetings in which she had been included, but, on information and belief, Schuch never took adverse action against them for

---

[3] Plaintiff does not provide any factual allegations as to the question itself, including in the amended complaint only this portion that she found objectionable.

such behavior" as he had done against her. Plaintiff further alleges that even where Schuch had become aware of a performance concern of one of her male counterparts, he declined to take an adverse employment action against him. As an example, she cites how she had once raised concerns about the chief financial officer's "supplanting of Title I funds." *Id.* at ¶ 58.

In demoting her, Plaintiff alleges that Schuch also "effectively relieved [her] of her job responsibilities for the balance of the academic year" (that is, through the end of June 2018). *Id.* at ¶ 49. Plaintiff alleges the demotion contrasts with the glowing evaluations Schuch had given her over the years, which include recommendations that she grow toward serving as superintendent. *Id.* at ¶¶ 21, 50. Plaintiff asserts that a demotion to a principal position was not just "a professional step backwards," but it would also result in the elimination of the automobile entitlement of $3,600 that she was due as Deputy Superintendent. *Id.* at ¶ 61. Further, the principal position to which Plaintiff was to be demoted was "explicitly not renewable, despite [Plaintiff] having achieved continuing contract status as a principal prior to becoming Assistant Superintendent in July 2009." *Id.* at ¶ 62.

### D. Plaintiff's Sex-Based Discrimination Claim

Plaintiff alleges that she then filed a claim of sex-based discrimination with Defendant Bedford County School Board, "outlining the sustained pattern of discrimination by Schuch that she had endured over the previous nine years, and specifically, the discriminatory act of demoting her." *Id.* at ¶ 63. Bedford County School Board retained an independent investigator to review Plaintiff's allegations. *Id.* at ¶ 64. During this review, the school board permitted Schuch to continue working, which Plaintiff claims runs contrary to "well established best practices in the field of human resources." *Id*. While Plaintiff takes issue with key aspects of the investigator's report, she notes that the report did at least caution Defendants Schuch and Bedford County School

Board that "in accordance with Policy GBA, retaliation against anyone who has reported discrimination or harassment or participated in any related proceeding is strictly prohibited." *Id.* at ¶ 67.

### E.  Plaintiff's Further Demotion to a Teaching Position

Plaintiff alleges that one business day after this report was submitted, Schuch signed a letter further demoting Plaintiff to a teaching position, "a role that she had not held for more than two decades." *Id.* at ¶ 69. The same letter indicated that Plaintiff's salary would "be reduced accordingly." *Id.* at ¶ 74. While this letter does not include a salary figure, Plaintiff alleges that "on information and belief this would have resulted in a total reduction of more than $72,000 compared to her compensation as Deputy Superintendent." *Id.* at ¶ 74. Schuch explained that the reasons for this second demotion recommendation "include [Plaintiff's] unwillingness to effectively understand and support the organizational structure of the school division. Additionally, [Plaintiff's] attitude and personal interactions with many school division leaders have created a professional climate that limits collaboration and impedes progress in implementing [Bedford County Public Schools'] strategic plan." *Id.* at ¶ 70. Plaintiff alleges Schuch failed to cite any specific behavior as problematic or falling short of his or the school board's expectations. *Id.* On the contrary, the prior year, Schuch had remarked how the Plaintiff had led "innovative practices that support the BCPS Strategic Plan." *Id.* at ¶ 72. In response to Schuch's letter recommending demotion, Plaintiff filed through counsel a second charge of sex-based discrimination with the school board against Schuch. *Id.* at ¶ 75.

On June 21, 2018, the Bedford County School Board held a hearing on Plaintiff's original discrimination allegations relating to her nine years of alleged discriminatory treatment—including her demotion to principal—but it refused to consider the charges she filed with the board

after her second demotion to a teaching position. *Id.* at ¶ 76. The school board upheld Schuch's demotion recommendation, but it assigned Plaintiff to an "instructional coach" position, rather than a principal position as Schuch originally recommended. The demotion resulted in a loss of more than $18,500.00 in annual compensation when compared to her compensation as Deputy Superintendent and Chief Academic Officer. *Id.* at ¶ 79.

Plaintiff alleges that Defendants' acts or omissions resulted in damages that include, but are not limited to, loss of past and future wages, physical and emotional pain, mental anguish, embarrassment, inconvenience, and loss of enjoyment of life. *Id.* at ¶ 81.

Plaintiff filed her second amended complaint on February 13, 2020, seeking back pay, front pay, compensatory damages, punitive damages, and reasonable attorney's fees and costs, *id.* at 21, after this Court ruled on a motion to dismiss her first amended complaint and dismissed Count I in part and Count II of that complaint in its entirety, granting Plaintiff leave to amend on all dismissed counts, Dkt. 33. On February 27, 2020, Bedford County School Board and Schuch filed a joint motion to dismiss Plaintiff's second amended complaint, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. Dkt. 36. This matter is now fully briefed and ripe for disposition.

## II.    STANDARD OF REVIEW

A motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6) tests the legal sufficiency of a complaint to determine whether a plaintiff has properly stated a claim. The complaint's "[f]actual allegations must be enough to raise a right to relief above the speculative level," *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007), with all allegations in the complaint taken as true and all reasonable inferences drawn in the plaintiff's favor, *King v. Rubenstein*, 825 F.3d 206, 212 (4th Cir. 2016). A motion to dismiss "does not, however, resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Id.* at 214.

Although the complaint "does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his entitle[ment] to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. A court need not "accept the legal conclusions drawn from the facts" or "accept as true unwarranted inferences, unreasonable conclusions, or arguments." *Simmons v. United Mortg. & Loan Inv., LLC*, 634 F.3d 754, 768 (4th Cir. 2011) (internal quotations omitted). This is not to say Rule 12(b)(6) requires "heightened fact pleading of specifics," instead the plaintiff must plead "only enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. Still, "only a complaint that states a plausible claim for relief survives a motion to dismiss." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009).

## III.   ANALYSIS

Defendants advance the following arguments in support of their motion to dismiss. First, Defendants contend that Plaintiff's disparate treatment claim under Title VII and § 1983 must fail because she has neither alleged the facts necessary to demonstrate that she suffered an adverse employment action nor that similarly situated male counterparts received more favorable treatment. Second, they argue that Plaintiff's discrimination allegations were made in her capacity as a government employee, not a citizen commenting on a matter of public concern, and so her speech is excepted from the First Amendment's protection. Third, they argue that Schuch is entitled to qualified immunity on the claims against him. This Memorandum Opinion will address each of these arguments in turn.

### A.  Count I: Title VII Claim Against Bedford County School Board

1. Disparate treatment claim based on Schuch's recommendation that Plaintiff be demoted to a principal position

Title VII makes it an unlawful employment practice "to fail or refuse to hire or to discharge

any individual, or otherwise . . . discriminating against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a). Employment practices made unlawful under § 2000e-2 are established "when the complaining party demonstrates that race, color, religion, sex, or national origin was a motivating factor for any employment practice, even though other factors also motivated the practice." § 2000e-2(m).

Since this Court's prior Order and Memorandum Opinion ruling on Defendants' motion to dismiss Plaintiff's first amended complaint, Dkts. 33–34, as well as the hearing on the motion to dismiss now pending before the Court, Dkt. 48, the Fourth Circuit has made clear that the elements of a Title VII claim can be satisfied without comparator evidence. *Bing v. Brivo Systems, LLC*, 959 F.3d 605 (4th Cir. 2020). In that case, the Fourth Circuit reviewed a Title VII disparate treatment claim on a motion to dismiss and directly addressed how a plaintiff could state facts that plausibly state a violation of Title VII. The court emphasized that "[i]n the context of a Title VII case, 'an employment discrimination plaintiff need not plead a prima facie case of discrimination' to survive a motion to dismiss.'" *Id.* at 616 (quoting *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 515 (2002)). Rather, a plaintiff is only "required to allege facts to satisfy the elements of a cause of action created by that statute." *Id.* (quoting *McCleary-Evans v. Md. Dep't of Transp.*, 780 F.3d 582, 585 (4th Cir. 2015). "Accordingly, our inquiry is whether [the plaintiff] alleges facts that plausibly state a violation of Title VII above a speculative level." *Id.* (internal quotations omitted). Accordingly, the Court must determine whether Plaintiff's second amended complaint plausibly demonstrates that "race, color, religion, sex, or national origin was a motivating factor for any employment practice, even though other factors also motivated the practice." 42 U.S.C. § 2000e-2(m).

Although the Fourth Circuit recognized that a plaintiff ultimately will have to prove their case either through the mixed-motive framework—which relies on direct or circumstantial evidence of discrimination—or the *McDonnell Douglas* "pretext" framework, it did not evaluate whether the complaint provided comparator evidence or whether it had met all of the elements of the prima facie case under *McDonnell Douglas*, despite its acknowledgement that the plaintiff in that case was proceeding under the *McDonnell Douglas* framework. *See Bing*, 959 F.3d at 616 & n.8, 617–19.

Moreover, the Fourth Circuit in *Bing* made no reference to comparator evidence as being required for the *McDonnell Douglas* framework at all, let alone at the pleading stage: "To prove a prima facie case of discrimination under *McDonnell Douglas* framework, [a plaintiff] must establish (1) membership in a protected class, (2) discharge, (3) while otherwise fulfilling Defendants' legitimate expectations at the time of his discharge, and (4) under circumstances that raise a reasonable inference of unlawful discrimination." *Bing*, 959 F.3d at 616 n.8 (citing *Ennis v. Nat'l Ass'n of Bus. & Educ. Radio, Inc.*, 53 F.3d 55, 58 (4th Cir. 1995)); *see Swaso v. Onslow Cty. Bd. of Educ.*, 698 F. App'x 745, 748 (4th Cir. 2017) (per curiam) (affirming district court's motion to dismiss employment discrimination claim and citing the prima facie case formulation in *Adams v. Trustees of the Univ. of N.C.-Wilmington*, 640 F.3d 550 (4th Cir. 2011)); *Adams* 640 F.3d at 558 ("To demonstrate a prima facie case of discrimination, Adams had to show that: (1) he belongs to a protected class; (2) he suffered an adverse employment action; (3) at the time of the adverse action, he was performing his job at a level that met his employer's legitimate expectations and was qualified for the promotion; and (4) he was rejected under circumstances giving rise to an inference of unlawful discrimination."); *Ellis v. Harrelson Nissan of South Carolina, LLC*, No. 0:15-cv-3322, 2017 WL 4349212, at *9 (D.S.C. Sept. 29, 2017) (explaining in review of motion

for summary judgment that the fourth prong of the prima facie case need not be satisfied solely through comparator evidence); *see also Spencer v. Va. State Univ.*, 919 F.3d 199, 207 (4th Cir. 2019) (applying *Adams*-style formulation in the pay-disparity context).

In accordance with the Fourth Circuit's opinion in *Bing*, the Court looks to whether Plaintiff has plausibly alleged an employment practice that was motivated in part on account of her gender in order to test the sufficiency of her Title VII claim. *See Bing*, 959 F.3d at 617 (evaluating factual allegations to determine whether plaintiff plausibly alleged that he was discriminated against because of his race without resorting to a *McDonnell Douglas* analysis). In this case, the Court concludes that Plaintiff's factual allegations are sufficient to raise beyond the speculative level a claim that she was discriminated against on account of her gender. *Twombly*, 550 U.S. at 555. This is true when accepting all of the allegations in the complaint and construing all reasonable inferences in her favor, as the Court must at this stage of the litigation. While the evidence supporting her claim may not ultimately bear out at trial, she is not required to prove her claim at this stage—she must merely plead it plausibly.

Plaintiff, as a woman alleging sex discrimination, is a member of a protected class. Further, the second amended complaint more than adequately alleges that she had maintained at least satisfactory job performance during her tenure with Bedford County Public Schools, as required by second prong of the analysis. Dkt. 35 at ¶ 21. The parties, however, dispute whether Bedford County School Board took at least one adverse action against Plaintiff and also dispute whether Plaintiff received treatment different than that provided to similarly situated employees outside the protected class. Given the analysis in *Bing*, the Court concludes that Plaintiff need not plead comparator evidence in order to plausibly state a claim under Title VII. Rather, she need only plead factual allegations that give rise to a reasonable inference that the adverse action taken against her

was the result of gender discrimination in violation of Title VII. As Plaintiff's amended complaint includes such factual allegations, the Defendants' motion to dismiss will be denied as to Count I against Bedford County School Board.

### i. *Adverse Employment Action*

Defendants argue that Schuch's refusal to dine with Plaintiff alone and Schuch's prohibition on Plaintiff's speaking with other chief officers' subordinates are not, as a matter of law, adverse employment actions. According to Plaintiff, Defendants' arguments miss the mark, because her complaint does not claim that these two actions constituted the necessary adverse employment action.

Rather, Plaintiff contends that Schuch, acting in his role as Superintendent, took at least one adverse action against Plaintiff when he removed her as Deputy Superintendent and Chief Academic Officer and recommended that she be demoted to a principal position, given the commensurate drop in compensation and title that the new role carried. It bears emphasizing that Bedford County School Board upheld Schuch's demotion recommendation, but it assigned Plaintiff to an "instructional coach" position, rather than a principal position as Schuch originally recommended. Due to the demotion, Plaintiff lost $18,500.00 annually from her compensation as Deputy Superintendent and Chief Academic Officer. *Id.* at ¶ 79. In their reply brief, Defendants do nothing to rebut Plaintiff's argument clarifying which of her allegations form the basis for the adverse action she suffered in violation of Title VII.

Demotion of an employee, "loss of job title or supervisory responsibility," and "reassignment" to a role with "significantly different responsibilities" all qualify as adverse employment actions under Title VII. *Boone v. Goldin*, 178 F.3d 253, 255–56 (4th Cir. 1999) (quoting *Burlington Industries, Inc. v. Ellerth*, 524 U.S. 742, 761 (1998)); *see also Hoyle v.*

*Freightliner, LLC*, 650 F.3d 321, 338 (4th Cir. 2011); *Knoskie v. Va. Dep't of Corr.*, No. 2:16-cv-00019, 2017 WL 673909, at *3 (W.D. Va. Feb. 17, 2017). Plaintiff has pleaded all of these *in addition* to a loss of compensation.

Thus, her allegations clearly suffice to demonstrate that an employment practice was taken against her "with respect to [her] compensation, terms, conditions, or privileges of employment," 42 U.S.C. § 2000e-2(a). *See Stevens v. Va. Dep't of Corr.*, No. 4:18-cv-00052, 2018 WL 6576407, at *2 (W.D. Va. Dec. 13, 2018) (quoting *Von Gunten v. Maryland*, 243 F.3d 858, 865 (4th Cir. 2001)) (internal quotations omitted) (stating that plaintiff must allege that she has suffered conduct that "adversely affects the terms, conditions, or benefits of [her] employment.").

## ii. *Circumstances Leading to Inference of Gender Discrimination*

The Court, again, emphasizes that "a plaintiff is not required as a matter of law to point to a similarly situated comparator in order to succeed on a discrimination claim." *Laing v. Fed. Exp. Corp.*, 703 F.3d 713, 720 (4th Cir. 2013) (Wilkinson, J.) *(*quoting *Bryant v. Aiken Reg'l Med. Ctrs. Inc.*, 333 F.3d 536, 545 (4th Cir. 2003)) (discussing generally the role of comparator evidence in discrimination cases) (alterations and internal quotations omitted); *see Bing*, 959 F.3d at 616 (evaluating claim on motion to dismiss without reference to comparator evidence); *see also Swaso*, 698 F. App'x at 748 ("A plaintiff is not required to identify a similarly situated white comparator to prove her discrimination claim, so long as she can establish an inference of unlawful discrimination through other means."); *Robinson v. Loudon Cty. Pub. Schs.*, No. 1:16-cv-1604, 2017 WL 3599639, at *3 (E.D. Va. Aug. 18, 2017).

Plaintiff alleges that, during an interview, Schuch questioned a white male candidate, stating as part of a question[4] that "[the outgoing principal] is a woman, you are a man; she is

---

[4] Plaintiff does not provide any factual allegations as to the question itself, including in the amended complaint only this portion that she found objectionable.

African American and you are white." *Id.* at ¶¶ 43–44. Plaintiff confronted Schuch about this question after the interview "at an appropriate time, and in an appropriate setting," explaining that his statement to the candidate was "inappropriate and could easily be construed as offensive." *Id.* at ¶ 45. Plaintiff compares her treatment to that of her alleged male counterparts, the chief financial officer and chief operations officer, stating that she had observed them "disagree with Schuch or offer constructive feedback in meetings in which she had been included, but, on information and belief, Schuch never took adverse action against them for such behavior" as he had done against her. Plaintiff goes on to allege that even in instances where Schuch had become aware of a performance concern of one of her male counterparts, he declined to take an adverse employment action against him. As an example, she cites how she had once raised concerns about the chief financial officer's "supplanting of Title I funds." *Id.* at 58.

This treatment occurs in the context of Plaintiff's other factual allegations relating Schuch's more favorable treatment of Plaintiff's male senior staff counterparts, such as dining alone with each of them but refusing to dine alone with her, permitting those male counterparts to bypass her authority and work with Plaintiff's subordinates directly and freely but prohibiting her from doing the same with their subordinates, as well as his distasteful comments.

Given the totality of the circumstances that Plaintiff has pleaded, she has plausibly stated factual allegations to support her Title VII claim. *See Bing*, 959 F.3d at 616–17; *Booth v. Cty. Executive*, 186 F. Supp. 3d 479, 486 (D. Md. 2016) (citing *Lightner*, 545 F.3d 260, 265 (4th Cir. 2008) (stating that a Title VII claim "could be based on a comparison to the treatment of similarly situated co-workers of different races or genders, if those colleagues were treated more favorably under similar conditions."). Specifically, when accepting all of Plaintiff's allegations as true and drawing all reasonable inferences in her favor, the Court finds that Plaintiff has pleaded beyond

the speculative level factual allegations that plausibly demonstrate that she was the victim of an employment practice that was motivated in part by discrimination based on her gender.[5] *Twombly*, 550 U.S. at 555. Accordingly, the Court will deny Defendants' motion to dismiss Count I against Bedford County School Board.

### B.  Count II: § 1983 Claim Against Dr. Douglas Schuch

Schuch contends that he is entitled to qualified immunity on the claims against him. When determining whether a claim is barred by qualified immunity, the Court must "decide whether the right at issue was 'clearly established' at the time of defendant's alleged misconduct." *Pearson v. Callahan*, 555 U.S. 223, 232 (2009). In conducting the clearly established analysis, courts "first examine  . . . decisions of the Supreme Court, [the Court of Appeals for the Fourth Circuit], and [the Supreme Court of Virginia]. We ordinarily need not look any further than decisions from these courts." *Booker v. S.C. Dep't of Corr.*, 855 F.3d 533, 538–39 (4th Cir. 2017) (citations and quotation marks omitted).

In determining whether a right is clearly established, it is not required that a case be directly on point. *Mullenix v. Luna*, 136 S. Ct. 305, 308 (2015). Rather "existing precedent must have placed the statutory or constitutional question beyond debate." *Id*. Such "clearly established" rights should not be defined "at a high level of generality," but "must be 'particularized' to the facts of the case." *White v. Pauly*, 137 S. Ct. 548, 552 (2017). "The dispositive question is 'whether the violative nature of particular conduct is clearly established.'" *Mullenix*, 136 S. Ct. at 308 (quoting *Ashcroft v. al-Kidd*, 563 U.S. 731, 742 (2011)) (emphasis in original).

---

[5] In the briefing and at the hearing on this motion, Defendants dispute that Plaintiff engaged in sufficiently similar conduct, because Plaintiff questioned the appropriateness of Schuch's conduct after an interview, while her purported comparators only disagreed or offered constructive feedback. As this Court has made clear in this opinion, however, Plaintiff need not plead comparator evidence at this stage in order to state a plausible claim of discrimination in violation of Title VII. *Laing*, 703 F.3d at 719–20.

Below, each claim will be analyzed to determine whether it is supported by a clearly established constitutional right.

1.  Disparate treatment claim based on Schuch's recommendation that Plaintiff be demoted to a principal position

The Fourth Circuit has held that where a state employee files suit against a public entity alleging employment discrimination on the basis of an enumerated characteristic, Title VII is not the exclusive remedy. *Holder v. City of Raleigh*, 867 F.2d 823, 828 (4th Cir. 1989). Rather, such employees "may still bring Fourteenth Amendment challenges under 42 U.S.C. § 1983 to discriminatory employment decisions." *Id*.; *see Wilcox v. Lyons*, No. 7:17-cv-000530, 2018 WL 1955826, at *1 (W.D. Va. Apr. 25, 2018) (Urbanski, J.). Further, "the equal protection clause confers on a public employee a federal constitutional right to be free from gender discrimination." *Beardsley v. Webb*, 30 F.3d 524, 530–31 (4th Cir. 1994). The elements required to establish a prima facie case of discrimination under § 1983 are the same as those under Title VII. *Briggs v. Waters*, 455 F. Supp. 2d 508, 519 (E.D. Va. 2006) (citing *Gairola v. Va. Dep't of Gen. Servs*., 753 F.2d 1281, 1285 (4th Cir. 1985)). As Plaintiff has stated a claim for gender discrimination under Title VII based on Schuch's conduct while in his role as Bedford County School Board's superintendent, the only question is whether Plaintiff's right to be free from gender discrimination is clearly established. The Fourth Circuit has held that the relevant inquiry in examining an equal-protection claim such as this is "whether an officer could reasonably have thought, in light of clearly established law, that [his] conduct was consistent with [plaintiff's] rights to be free from discrimination." *Beardsley*, 30 F.3d at 530.

Defendants argue that the right to be free from gender discrimination was not "clearly established" under the circumstances in this case. Specifically, they claim it was not sufficiently clear to a reasonable officer in Schuch's position that "'calling out' one's direct supervisor for his

personal behavior is the same behavior as disagreeing with or offering constructive feedback to one's supervisor in a meeting." Dkt. 37 at 18–19. Defendants further argue that the right to be free from gender discrimination cannot be clearly established by Bedford County School Board's gender discrimination policies, which Plaintiff argues put Schuch on notice of her rights. Rather, Defendants argue (correctly) the right must be announced authoritatively by the U.S. Supreme Court, the U.S. Court of Appeals for the Fourth Circuit, or the Supreme Court of Virginia.

While the generalized right to be from gender discrimination under the Equal Protection Clause of the Fourteenth Amendment has been clearly established, the circumstances pleaded in this case would not have objectively put Schuch on notice that he was violating Plaintiff's rights under the equal protection clause. *Simmons v. Poe*, 47 F.3d 1370, 1385 (4th Cir. 1995) (holding that "proper focus is not upon the right at its most general or abstract level, but at the level of its application to the specific conduct being challenged" (internal quotations and citations omitted)). Plaintiff has alleged that Schuch treated her more harshly than her male counterparts in response to criticism and ultimately demoted her, but the Court does not agree that the law is so clearly established as to these circumstances such that a reasonable official in Schuch's position would not be on notice that his particular behavior, specifically the way in which he responded to Plaintiff "calling him out" as opposed to the way in which he treated male counterparts who questioned his decisionmaking, would be a violation of Plaintiff's equal protection rights. *See Anderson v. Creighton*, 483 U.S. 635, 638 (1987). This is true even in the context of the factual allegations that establish that a plausible inference of gender discrimination, such as *inter alia* Schuch's distasteful comments and his refusal to dine with Plaintiff but not her counterparts.

Courts do not impose upon officials "a duty to sort out conflicting decisions or to resolve subtle or open issues. 'Officials are not liable for bad guesses in gray areas; they are liable for

transgressing bright lines.'" *McVey v. Stacy*, 157 F.3d 271, 277 (4th Cir. 1998) (quoting *Maciariello v. Sumner*, 973 F.2d 295, 298 (4th Cir. 1992)). It cannot be said that Schuch transgressed a bright line when he took the conduct alleged in the complaint—at worst it was a bad guess in a gray area. As such, Defendants' motion to dismiss will be granted as to Plaintiff's equal protection claim against Schuch.

   2.   Retaliation claim based on Schuch's recommendation that Plaintiff be demoted to a teaching position

   After filing her claim for sex-based discrimination "outlining the sustained pattern of discrimination by Schuch that she had endured over the previous nine years, and specifically, the discriminatory act of demoting her," Dkt 35 at ¶ 63, Bedford County School Board hired an independent investigator to review the allegations, *id.* at ¶ 64. Just one business day after the investigator's report was filed, Plaintiff alleges that Schuch, acting in his role as Superintendent, retaliated against Plaintiff by again recommending that she be demoted. *Id.* at ¶ 64. Rather than restating his recommendation that she be demoted to a principal position, Plaintiff alleges that Schuch recommended this time that Plaintiff be demoted, even further down the hierarchy, to a teaching position, "a role that she had not held for more than two decades." *Id*. The same letter indicated that Plaintiff's salary would "be reduced accordingly."[6] *Id.* at ¶ 74. This second demotion recommendation letter led Plaintiff to file a second charge of sexual discrimination.

   After a hearing, which addressed only Plaintiff's first sexual discrimination charge, Bedford County School Board ultimately upheld Schuch's recommendation to demote Plaintiff, choosing to reassign her to an "instructional coach" position. *Id.* at ¶ 77. The demotion resulted in a loss of more than $18,500.00 in annual compensation when compared to her compensation as Deputy Superintendent and Chief Academic Officer. *Id.* at ¶ 79.

---

   [6] *See supra* note 4.

Plaintiff claims that Schuch's conduct violated her rights under the First Amendment to be free from retaliation. The Court finds that even if Plaintiff has sufficiently pleaded the elements of such a First Amendment violation, her claim is barred by qualified immunity.

While government employees "do not relinquish all First Amendment rights otherwise enjoyed by citizens just by reason of [their] employment," the government retains the right as an employer to "impose certain restraints on the speech of its employees . . . that would be unconstitutional if applied to the general public. *City of San Diego v. Roe*, 543. U.S. 77, 80 (2004) (per curiam). The Fourth Circuit has articulated that "[u]nderlying this rule is both the government employee's interest, as a citizen in commenting upon matters of public concern, and the community's interest in hearing those employees' informed opinions on important public issues." *Crouse v. Town of Moncks Corner*, 848 F.3d 576, 582 (4th Cir. 2017) (quoting *Pickering v. Bd. of Educ.*, 391 U.S. 563, 568 (1968) & *Roe*, 543 U.S. at 82) (internal quotations and citations omitted).

In evaluating a government employee's First Amendment claim against their employer, the Court must apply a three-prong test. *Id.* at 583.

> The first prong asks whether the employee was speaking as a citizen upon a matter of public concern or as an employee about a matter of personal interest. This prong can in turn be divided into two inquiries: whether the speech was made as a citizen or pursuant to the employee's duties, and whether the content of the speech addressed a matter of interest to the community rather than complaints over internal office affairs. If the speech was made as a citizen and addressed a matter of public concern, the second prong of the test requires a court to balance the interest of the employee in speaking freely with the interest of the government in providing efficient services. The *Pickering* balancing test demands a "particularized" inquiry into the facts of a specific case. If a court determines that the employee's interest outweighed the government employer's interest, the third prong requires a determination that the employee's speech caused the disciplinary action.

*Id.* (internal quotations and citations omitted). While the first two prongs are questions of law, the third is a question of fact. *Id.* (citing *Brooks v. Arthur*, 685 F.3d 367, 371 (4th Cir. 2012)). The

Court concludes that Plaintiff's sex-discrimination charges she filed with Bedford County School Board against Schuch, her supervisor, do not constitute a matter of public concern. Thus, Schuch is qualifiedly immune on the retaliation charge against him in his individual capacity under Count II.

   i.   *Matter of Public Concern*

Speech by a government employee is a matter of public concern "when it involves an issue of social, political, or other interest to a community." *Kirby v. City of Elizabeth City*, 388 F.3d 440, 446 (4th Cir. 2004). Matters such as "[p]ersonal grievances, complaints about conditions of employment, or expressions about other matters of personal interest" are not matters of public concern because they "are matters more immediately concerned with the self-interest of the speaker as employee." *Campbell v. Galloway*, 483 F.3d 258, 267 (4th Cir. 2007). Similarly, "a federal court is not the appropriate forum in which to review the wisdom of a personnel decision taken by a public agency." *Borough of Duryea v. Guarnieri*, 564 U.S. 379, 399 (2011). In determining whether speech is a matter of public concern, courts should look to "content, form, and context of a given statement." *Connick*, 461 U.S. at 147–48.

Although courts tend to find that speech is more likely to be public when it is made in a public forum such as a newspaper or on social media, a public forum is not required. *See Pickering*, 391 U.S. at 566, (newspaper); *Liverman v. City of Petersburg*, 844 F.3d 400, 409 (4th Cir. 2016) (online social media); *Robinson v. Balog*, 160 F.3d 183, 188 (4th Cir. 1998) (testimony at a public meeting). For example, the Fourth Circuit has been clear that statements made in private may nonetheless be about matters of public concern. *Goldstein*, 218 F.3d at 354 ("Similarly, the fact that Goldstein did not make his views publicly known does not, in any way, undermine the public concern encompassed in his speech."). Because Plaintiff took her concerns to various public

officials, it is more likely that she was speaking on an "issue of social, political, or other interest to a community." *Campbell*, 483 F.3d at 267; *Cromer v. Brown*, 88 F.3d 1315, 1326 (4th Cir. 1996) (rejecting the view that "that exposing serious government misconduct to the news media is protected, but exposing that same misconduct to the Governor's Office, as in this case, by definition is not").

The Fourth Circuit has made clear that "a complaint about sexual harassment or discrimination is not *always* a matter of public concern," *Campbell*, 483 F.3d at 268 (emphasis in original), but it has steadfastly refrained from creating a bright-line rule, *id.* at 269. Rather, the issue "whether such complaints are in any given case [a matter of public concern] depends on the content, form and context of the complaint." *Id.*; *Carey v. Throwe*, 957 F.3d 468, 475 (4th Cir. 2020).

The speech forming the basis for Plaintiff's retaliation claim is a complaint she filed with her employer (the Bedford County School Board) about the discriminatory conditions of employment she personally faced from her direct supervisor (Schuch). Plaintiff indicates that the complaint "outline[ed] the sustained pattern of discrimination by Schuch that she had endured over the previous nine years and, specifically, the discriminatory act of demoting her." Dkt. 35 at ¶ 63. Here, Plaintiff was not speaking of a pattern of systemic discrimination within the school system, rather, every indication in the complaint points to the conclusion that the complaint was solely related to her personal interactions with Schuch.

Further, the statements were "filed" as a "claim for sex-discrimination" through what can only be described as an employee grievance procedure, even taking all reasonable inferences in Plaintiff's favor. The U.S. Supreme Court has specifically spoken to whether statements filed pursuant to such employee grievance procedures are matters of public concern, holding that a

"petition filed with an employer using an internal grievance procedure in many cases will not seek to communicate to the public or to advance a political or social point of view beyond the employment context." *Guarnieri*, 564 U.S. at 398. It further remarked that while "in one sense the public may always be interested in how government officers are performing their duties" such interest will not always suffice to make the matter one of public concern. *Id.*; *see Brooks*, 685 F.3d at 374 (holding that plaintiff's "concern was not expressed in terms of a breakdown in effective [organizational] management, but rather focused on his personal displeasure with his supervisors" and so was not a matter of public concern).

The "content, form, and context" of the statement Plaintiff made formed the basis for a prototypical, albeit serious, workplace dispute. *Campbell*, 483 F.3d at 267. Accordingly, the Court concludes that Plaintiff's sex-discrimination claim does not constitute a matter of public concern, because there is nothing in the complaint that suggests that Plaintiff intended to "advance a political or social point of view beyond the employment context. *Guarnieri*, 564 U.S. at 398; *see Brooks*, 685 F.3d at 372–73 (stating that "discriminatory institutional policies or practices can undoubtedly be a matter of public concern [but] [t]he gravamen of this matter however, remains a series of personal differences"); *Brown v. Batton*, No. 19-cv-1450, 2020 WL 886142, at *25 (D. Md. Feb. 21, 2020) (finding complaint to employer of racially discriminatory comments and practices constituted comments on conditions of employment and thus not a matter of public concern); *Taylor v. Cty. of Pulaski*, No. 7:06-cv-00467, 2008 WL 4533977, at *4 (W.D. Va. Oct. 8, 2008). Therefore, the Court will grant the motion to dismiss Plaintiff's First Amendment claim against Schuch under Count II.

## CONCLUSION

For the foregoing reasons, the Defendants' motion to dismiss will be granted in part and

denied in part. Defendants' motion to dismiss will be denied as to Plaintiff's disparate treatment claim against Bedford County School Board under Count I and granted as to Count II against Schuch.

An appropriate Order will issue, and the Clerk of the Court is hereby directed to send a copy of this Memorandum Opinion to Plaintiffs, Defendants, and all counsel of record.

ENTERED this __6th__ day of July, 2020.


NORMAN K. MOON
SENIOR UNITED STATES DISTRICT JUDGE